# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03171-KLM

ROCKY MOUNTAIN WILD, INC., a Colorado non-profit corporation,
     Plaintiff,
     v.
UNITED STATES BUREAU OF LAND MANAGEMENT, a federal agency; and
UNITED STATES DEPARTMENT OF INTERIOR, a federal agency,
     Defendants.

_____

## RESPONSE TO MOTION FOR SUMMARY JUDGMENT

Plaintiff, through Counsel, files this Response to Defendants' Motion for Summary Judgment. ECF No. 18. Defendants' Motion cannot be granted because there are genuine issues of material fact regarding: (1) Defendants' search for responsive records, and (2) Defendants use of Exemptions to withhold documents. A Cross-Motion that incorporates this Response by reference, and sets out Plaintiff's requested relief, is being filed contemporaneously.

## INTRODUCTION

Plaintiff Rocky Mountain Wild ("RMW") is a non-profit organization based in Denver, Colorado. On May 15, 2019, RMW filed a FOIA request seeking information about BLM's Tres Rios Field Office ("TRFO") Area of Critical Environmental Concern ("ACEC") Resource Management Plan ("RMP") amendment process.  RMW's FOIA requests inform its public land program, participation in BLM's amendment process, RMW's public and conservation and governmental partners, and RMW's consideration of a possible legal challenge to BLM's January 29, 2020 amendment decision.  Defendants' FOIA violations harm RMW's FOIA rights and statutory rights to informed participation in BLM's land management process. RMW filed its FOIA Complaint on November 7, 2019. BLM has not filed an Answer.

## RESPONSE TO STATEMENT OF MATERIAL FACTS

**1.** Deny as an incomplete statement of the scope of the written request. The FOIA request sought all agency records involving the TRFO ACEC amendment ("ACEC Amendment") to the TRFO RMP. ECF No. 18-2 at 1.

**2.** Deny as an incomplete statement RMW's purpose. The Request states RMW's purpose:

> The input from external agencies and entities will help us to determine the value of these proposed protected areas. This information will assist our organization, our members, and the general public to better understand this process prior to making a final decision. As an organization focused on protecting wildlands for wildlife it is important for us to fully understand the impacts of this this proposed action.

*Id.*

**3.** Admit.

**4.** Admit.

**5.** Admit the first sentence. Deny the second sentence. BLM employees denied proposals to designate the two ACECs located within Gunnison sage-grouse habitat by excluding them from BLM's scope of analysis. ECF No. 18-7 at BLM0890-933, BLM1326, BLM1775-1782, BLM1788-7996, BLM1839-1853, BLM1956-1987, BLM 2425-2442, BLM2443-2455, BLM3443-3498 (redacted information regarding controversy over removing Gunnison-sage grouse habitat from ACEC Amendment analysis).

**6.** Admit.

**7.** Admit to review of the FOIA request.

**8.** Admit that Ms. Garcia Hinojosa prepared the response. Deny that Ms. Garcia Hinojosa's declaration is based on personal knowledge. Aver that Ms. Garcia Hinojosa's personal knowledge is limited to the sworn statements she made in the declaration the Court ordered BLM to produce by March 19, 2020. Ex. 1 at ¶¶5, 15. Aver that the April 17, 2020 declaration is a

*post hoc* description derived from undisclosed agency records. ECF No. 18-1 at ¶¶37, 44.

**9.** Admit.

**10.** Admit.

**11.** Deny. This statement is not based on personal knowledge. *See* Ex. 1 at ¶ 15. Testimony as to this assertion can be obtained directly from Ms. Clementson.

**12.** Deny. This statement is not based on personal knowledge. *Id*. Testimony as to this assertion can be obtained directly from Ms. Clementson.

**13.** Deny. This statement is not based on personal knowledge. *Id*. Testimony as to this assertion can be obtained directly from Mr. Fox.

**14.** Deny. The notification email provides the best evidence of its contents, and without reviewing the document, RMW is unable to admit or deny Ms. Garcia Hinojosa's characterization of the email. The email is not subject to any privilege. ECF No. 18 at ¶14.

**15.** Deny. This statement is not based on personal knowledge. Ex. 1 at ¶¶5, 15. Testimony as to this assertion can be obtained directly from Mr. Fox. The practice of BLM in responding to FOIA is to allow non-FOIA-specialist staff to individually determine and use *ad hoc* means to search for agency records in their possession. ECF No. 18-1 at ¶12.

**16.** Admit. The search within the Tres Rios Field Office was limited to these 7 staff searching their own files and involved no standard set of search terms or locations searched. *Id.*

**17.** Admit. Due to her lack of direct knowledge, Ms. Garcia Hinojosa determined that the search would be limited to only the TRFO and the Colorado State Office.

**18.** Admit.

**19.** Deny. This statement is not based on personal knowledge. Ex. 1 at ¶¶5, 15. Testimony as to this assertion can be obtained directly from Mr. St. George.

**20.** Deny. This statement is not based on personal knowledge. Ex. 1 at ¶¶5, 15. Evidence as to this assertion is available directly from Mr. St. George and by producing the executed certification of search forms. *Id.* at ¶23.

**21.** Deny. All searches were conducted without the FOIA Officer providing a date range to guide BLM personnel's search for records. *Id.* at ¶21.

**22.** Admit.

**23.** Deny. This statement is not based on personal knowledge. Ex. 1 at ¶¶5, 15. The "certification of search form" provides the best evidence as to its contents. ECF No. 18-1 at ¶23. No privilege prevents BLM from producing these forms.

**24.** Deny. BLM's limited set of custodians failed to include personnel likely to possess responsive records. BLM's failure to search the WO, the Southwest Regional Office, Connie Clementson, Ryan Joyner, Kevin Oliver, and other BLM staff who participated in the ACEC Amendment process resulted in files containing responsive records that were not searched. Ex. 3 - Ex. 25. BLM's inconsistent use of search terms resulted in unsearched files.

**25.** Admit.

**26.** Admit.

**27.** Admit that BLM reached its stated legal conclusion. Deny exemptions were proper.

**28.** Admit only that BLM reached its stated legal conclusion.

**29.** Admit only that BLM reached its stated legal conclusion.

**30.** Admit only that BLM reached its stated legal conclusion.

**31.** Admit only that BLM reached its stated legal conclusion. The *Vaughn* index lacks the detail required to assess the allegation.

**32.** Admit. The *Vaughn* index lacks the detail required to assess the allegation, and makes no

effort to segregate counsel's legal advice from "the content of counsel's comments to the BLM."

**33.** Admit BLM made this determination.

**34.** Admit BLM made this determination.

**35.** Admit that Ms. Garcia Hinojosa prepared two *Vaughn* indexes during this litigation. The *Vaughn* index produced (Ex. 2) on the deadline set by the Court (ECF No. 16) differs materially from the *Vaughn* index filed with the Court. ECF No. 18-7. Aver that BLM did not prepare contemporaneous privilege logs. Aver that the "certification of search form" prepared by each custodian contains information relevant to application and/or waiver of the FOIA Exemptions.

**36.** Admit.

**37.** Admit.

## STATEMENT OF ADDITIONAL FACTS

**38.** BLM did not search persons or files in Washington D.C. for responsive agency records.

**39.** BLM personnel in the BLM Washington Office ("WO") are likely to have responsive records that have not been produced. WO-### is an organizational code used to denote BLM personnel assigned to the WO, despite their physical location. Records released by BLM show involvement of WO personnel in the underlying activities, including the BLM Director, Deputy Director, WO-100, WO -200, WO-210, WO-300, and WO-400 level staff. *See e.g*. Ex. 3, 4[1].

**40.** The BLM WO personnel were briefed on the Tres Rios ACEC RMP Amendment on or about August 17, 2018. Ex. 3 (Director Briefing emails). BLM WO was briefed again in October 2018. Ex. 4 (same) In preparation for and in response to the WO Directors Briefings, agency records were created and obtained by WO personnel, including Ryan Hathaway, Stephanie

---

[1]Bates numbered documents produced pursuant to Rule 26 are provided as true and correct copies of documents released to Plaintiff pursuant to FOIA, which were not Bates numbered.

Miller, Brian Steed, Mike Nedd, Kelly Orr, Jeff Brune, Kristin Bail, Steve Tryon, Anthony Bobo, Heather Bernier, Timothy Spisak, Chris McAlear, and Nikki Haskett. Ex. 5 (BLM2468).

**41.** BLM's WO oversaw the entire ACEC amendment process. Ex. 4-6.  BLM discussed strategies for "getting WO and DOI to support getting this effort done and not letting it languish.[…]." Ex.7 at BLM4044. The TRFO and Colorado "goal is to produce a set of documents that won't be sent back and that will convince WO why we need to let this process play out." *Id*. Mike Purdy received comments from other WO personnel. Ex. 8 at BLM0871-2. Kevin Oliver, Acting Policy Advisor to the WO Director provided direction to Colorado and TRFO personnel. Ex. 9 at BLM1754.

**42.** Records involving WO were withheld in full and in part. ECF No. 18-7 (*Vaughn* Index) at 3 (BLM0567), 14 (BLM2617 - memo from Gregory Shoop), 15 (BLM2755 - memo circulated among WO personnel), 15 (BLM2776 - documents circulated among WO personnel to inform Director Briefing); 18 (BLM3413 - Deputy Director briefing), 18 (BLM3422- Director briefing).

**43.** Communications between WO, Colorado, and Tres Rios Field Office do not always go through official channels. On August 22, 2019, Brian St. George, Deputy State Director, Office of Resources and Planning (https://www.blm.gov/office/national-office), announced that he had "gotten third hand word through WO Communications that the Department is holding the plan for unknown reasons. Greg is coordinating with WO100 to get clarification." Ex. 10 at 1.

**44.** BLM formalized ongoing relocation of national leadership to Grand Junction, Colorado and other offices on or about November 1, 2019. https://www.blm.gov/office/national-office/hq-move-west. Panchita Paulete is located in Oregon and carried out WO duties involving the ACEC Amendment, but did not conduct a search. Ex. 4 at BLM3650. BLM did not make any effort to identify or search remote WO personnel.

**45.** BLM's Southwest District Office ("SWO") participated in the ACEC Amendment. Ex. 11 at 865 (Dana Wilson, Shannon Borders); *Id*., Ex 12 at BLM0128 (Deborah (Maggie) Magee, NEPA Coordinator). James Blair, Garth Nelson, and Patrick Parks worked with Ms. Magee to determine "relevance and importance" of ACECs. *Id.* None searched for responsive records.

**46.** Only 7 BLM personnel in the Tres Rios Field Office searched for records.

**47.** Connie Clementson, the TRFO Field Manager did not search for responsive records. Ms. Clementson possesses records related to RMW's FOIA request. Ex. 11-12, Ex. 13 (Durango Herald), 14 (Telluride Watch); Ex. 15 at BLM0015, Ex. 16 at BLM2654, Ex. 17 at BLM2523.

**48.** Contents of the responsive records confirm that many more than seven persons in the Tres Rios Field Office are likely to possess responsive agency records. *See e.g.* Exs. 3-12, 15-23.

**49.** Only 4 personnel in the Colorado State Office searched for records. ECF No. 18-1 at ¶41.

**50.** More than 4 BLM personnel in the Colorado State Office, including but not limited to John Beck, are likely to possess responsive agency records. *See* e.g. Ex. 4 at BLM3653-4, Ex. 11.

**51.** RMW further asserts that additional searches are likely to identify responsive records based on names included in responsive records and by information that only BLM possesses.

**52.** Contents of redacted BLM emails confirm other BLM employees involved in this decision that did not conduct searches, include but is not limited to Megan Stouffer, Ryan Joyner, Stephanie Connolly, Bridget Clayton, and Michael Schmidt. *Id.* Ex. 18, Ex. 19 (BLM0143).

**53.** BLM employees used search terms that would not capture records created by other BLM staff that use different ways to identify the documents or the issues involved in this decision. ECF No. 18-1 at ¶¶35, 41. BLM did not specify the file systems each person searched, the software used to conduct electronic searches, or the date searches were conducted.

**54.** The ACEC Amendment decision relied on the ESA Section 7 Consultation that supported the

RMP. BLM relied on Endangered Species Act analysis that took place in or before 2013. Ex. 20 (ESA Consultation Letter).

**55.** Key BLM staff involved in the ESA compliance process for the ACEC Amendment, including but not limited to Ms. Clementson, were not asked to search for records. *Id.*

**56.** BLM failed to search for documents supporting the analysis contained within the Tres Rios Resource Management Plan NEPA process and ESA consultation involving Gunnison sage-grouse. The ACEC amendment decision relied on these documents in asserting NEPA and ESA compliance. Ex. 21 (Environmental Assessment ("EA") at 44 ("The cumulative effects analysis tiers to the analysis for specific resources in the BLM Tres Rios Field Office/San Juan National Forest LRMP EIS (USFS and BLM 2013). The LRMP EIS…includes reasonable foreseeable development within the entire Tres Rios Field Office…"). These documents contain analysis of stipulations, cumulative impacts, ESA compliance, overall impacts, and any other relevant information, and are agency records created or obtained by BLM personnel during the ACEC Amendment process. Ms. Clementson briefed the public on this process. Ex. 22, 23.

**57.** Searches were not conducted by BLM persons identified in Plaintiff's exhibits. Ex. 1-25.

**58.** BLM did not provide any documentary evidence of the beginning date or ending cut-off date used by any person carrying out a FIOA search. BLM's search did not set a temporal scope.

## SUMMARY JUDGMENT STANDARD

Summary judgment must be denied if there is a "genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The District Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988). Only where the agency has carried its FOIA burdens by presenting admissible evidence, "the burden then shifts to the nonmoving party who

must provide […] evidence to contradict the moving party […]."[2] *Schwarz v. Nat'l Archives & Records Admin.*, 1998 U.S. App. LEXIS 24885, at *4 (10th Cir. October 7, 1998) (citation omitted) (unpublished).  FOIA places the burden on the agency and is broadly construed in favor of disclosure. *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1226 (10th Cir. 2007).

Agency-deferential caselaw must be relied upon with care, if at all, after Congress amended FOIA in 2007 to confirm the legislative purpose of FOIA and to "ensure that the Government remains open and accessible to the American people and is always based not upon the 'need to know' but upon the **fundamental 'right to know**.'" Pub. L. No. 110-175, 121 Stat. 2524, Section 2 ¶6 2007) (emphasis added).  In applying FOIA, as amended through 2016, the 11th Circuit concluded that Congress has only "approved of deference within the specific context of Exemption 1" and Exemption 3, along with technical feasibility and reproducibility. *Broward Bulldog, Inc. v. United States DOJ*, 939 F.3d 1164, 1183 (11th Cir. 2019).  *De novo* review, not agency deference, is the statutory standard Congress directed the Courts to apply to agency assertions of all other FOIA exemptions. *Id.* (reviewing legislative history of FOIA).

In the typical FOIA case, "the focal point of the judicial inquiry is the agency's search process, not the outcome of its search." *Trentadue,* 572 F.3d at 797. District Courts "must determine *de novo* whether the agency's search was reasonable and whether its decision not to disclose requested materials was proper under the statute." *Rocky Mt. Wild, Inc.*, 138 F. Supp. 3d 1216, 1221 (D. Colo. 2015) *citing United States Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755, (1989); *Anderson v. HHS*, 907 F.2d 936, 941 (10th Cir. 1990). The burden is on the agency to meet these standards with admissible evidence.

In demonstrating the adequacy of its search, [an agency may rely on an] affidavit [that is]

---

[2] Evidence of bad faith is an additional, but not necessary, basis to rebut the agency showings.

reasonably detailed, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched so as to give the requesting party an opportunity to challenge the adequacy of the search.

*Al-Turki v. DOJ*, 175 F. Supp. 3d 1153, 1211 (D. Colo. 2016). The Tenth Circuit regularly looks to the District of Columbia caselaw when interpreting and applying FOIA, which has expressed skepticism about deferring to an agency that is regulated by FOIA. *See e.g. Anderson*, 907 F.2d at 951 ("the D.C. Circuit […] explained…agencies are not necessarily neutral interpreters insofar as FOIA compels release of information the agency might be reluctant to disclose.'").

## ARGUMENT

### I.      BLM's Search for Responsive Records Was Not Reasonable

BLM's search for responsive records was not "reasonably calculated to uncover *all* relevant documents." *INFORM v. BLM*, 611 F. Supp. 2d 1178, 1184 (D. Colo. 2009) (*emphasis added).* To survive *de novo* FOIA review, an agency must use admissible evidence to establish: 1) the scope of the search based on broad interpretation of the request that the agency adjusted based on facts learned during the search, *Id.;* 2) the methods actually used to carry out the search, *Id*.; and 3) the "cut-off date" used when carrying out the searches. *Rocky Mt. Wild, Inc.,* 138 F. Supp. 3d at 1221. The D.C. District Court, which handles the majority of FOIA cases, "has noticed a pattern of this type of myopia plaguing FOIA reviewers in some of our federal agencies" that use search terms that misinterpret "the precise term used in the request […] to include the oft-used synonyms." *Judicial Watch, Inc. v. United States DOJ*, 373 F. Supp. 3d 120, 125 (D.D.C. 2019). BLM's failure to conduct a search of files within BLM's WO, Southwest District Office, and all agency employees who participated in this process, and the use of subjectively tailored search terms results in an unreasonable search.

### a. BLM's Search Excluded Employees Likely to have Responsive Records

BLM did not provide evidence of a search carried out by all persons and locations likely to have responsive records. *Friends of Blackwater v. United States DOI*, 391 F. Supp. 2d 115, 122 (D.D.C. 2005) *citing* 43 C.F.R. § 2.22(a)(1). Even in cases where an agency provides admissible evidence, "the requester may nonetheless produce countervailing evidence, and if the sufficiency of the agency's identification or retrieval procedure is genuinely in issue, summary judgment [for the agency] is not in order." *Id.* Granting the agency request for "summary judgment is inappropriate if 'a review of the record raises substantial doubt as to the search's adequacy, particularly in view of well defined requests and positive indications of overlooked materials." *Reporters Comm. v. FBI,* 877 F.3d at 402 (citations and internal quotations omitted).

BLM unreasonably failed to request the Washington D.C. Office search for records. BLM made no "effort to determine whether BLM personnel in […] the BLM's national office [that] participated in the agency's decision-making [. . .] may have responsive records in their control or possession." *INFORM*, 611 F. Supp. 2d at 1184 *citing Friends of Blackwater*, 391 F. Supp. 2d at 121-22. Through documentary evidence, it is clear that the Washington D.C. Office was involved in this decision. *See supra ¶¶*39-44.

Similarly, staff from the Southwest District Office, TRFO manager Connie Clementson, and other State and TRFO Staff did not search for responsive records. *See supra* ¶¶45-53.

The search was allegedly complete within 16 days of the May 15, 2019 FOIA request, with no BLM effort to follow-up on information contained in the records themselves. ECF No. 18-1 at ¶36, 42 ("All searches were completed on or before May 31, 2019."). A one-and-done approach is unreasonable under the circumstances, and confirms that BLM did not conduct a subsequent search or make any effort to ensure the searches conducted before May 31, 2019

were designed to find other responsive agency records created or obtained by BLM personnel, such as those in the WO and possessed by Connie Clementson, who lead BLM's local efforts. *Supra* ¶¶ 38-56.

### a. Unreasonably Narrow Set of Search Terms

BLM describes an approach to electronic search terms that has been widely repudiated. "FOIA requests are not a game of Battleship. The requester should not have to score a direct hit on the records sought based on the precise phrasing of [the] request. Rather, the agency must liberally interpret the request and frame its search accordingly." *Gov't Accountability Project v. United States Dep't of Homeland Sec.*, 335 F. Supp. 3d 7, 12 (D. D.C. 2018). Here, the problems multiply because each custodian came up with unique search terms. ECF No. 18-1 at ¶34.

First, terms used in the FOIA Request, such as Gunnison sage-grouse (GUSG), ACEC (Area of Critical Environmental Concern), amendment process, ESA Compliance, were not consistently searched. The failure to search for the terms used in the request is compounded by a "failure to search for […] obvious synonyms and logical variations of these terms. *Judicial Watch, Inc.*, 373 F. Supp. 3d at 125. Allowing BLM's non-FOIA specialist to choose one or two generic search terms is unreasonable.[3] ECF No. 18-1 at ¶34.

The use of unreasonable terms produced a disjointed search where each custodian used different terms to identify records based on how each interpreted the FOIA request. Any

---

[3] For example, Keith Fox searched for "Areas of Critical Environmental Concern" and "Resource Management Plan Amendment" but not search terms used by other custodians such as ACEC, RMP, Gunnison sage-grouse, GUSG, ACEC RMP Amendment, VRM, Mudsprings, TRFO RMP Amendment. Several released documents in Mr. Fox's possession contain these acronyms, and would not be identified by his search terms. *See e.g.* Ex. 1, 4, 5. Similarly, the other custodians only used a small subset of search terms compared to the wide range of terms the produced records confirm were utilized by other BLM personnel. ECF No. 18-1 at ¶34.

documents sent to Mr. Fox with the terms ACEC, RMP amendment, Gunnison sage grouse, or any of the other ways his co-workers described this process would not be identified in Mr. Fox's search due to his choice of two search terms for use in mail and shared drives - "Areas of Critical Environmental Concern" and "Resource Management Plan Amendment." *Id.* at ¶35. This analysis applies to each of the 11 custodians, all of whom conducted *ad hoc* searches of vaguely referenced file systems using unique, often generic, search terms. *Id*. at ¶¶35, 41.

Last, each custodian's decision to use terms commonly used by BLM raises issues regarding the manner of the electronic search (Boolean, simple terms, etc.) and the software used. BLM identifies no effort to address inherent concerns of using generic terms such as "Resource Management Plan Amendment."  The general terminology needed to conduct a broad, inclusive search also "dictates using more sophisticated search techniques, including additional filtering keywords or Boolean operators and connectors, to winnow the results to a manageable level." *Gov't Accountability Project v. United States Dep't of Homeland Sec*., 335 F. Supp. 3d at 13 n.3; *Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 877 F. Supp. 2d 87, 106-07 (S.D.N.Y. 2012) (giving several examples of how slight changes to search terminology and use of Boolean connectors yields dramatically different results); *Bagwell v. United States DOJ*, 311 F. Supp. 3d 223, 230 n.3 (D.D.C. 2018) ("If technically feasible, the Department might consider using Boolean search terms to limit the number of unresponsive documents returned.").  There is no technical barrier to conducting a sophisticated search.

### c.   BLM failed to provide a date range for its search

BLM's search is *per se* unreasonable, because it was conducted without cutoff dates that set a temporal scope. ECF No. 18-1 at ¶21 ("custodians did not impose a restrictive date range on their respective searches"). Establishing the temporal scope of a FOIA search is an important

feature that requires the government to establish "reasonable cut-off date[s]" based on the facts of each case that allows the Court to ensure the search "comport[s] with its obligation to conduct a reasonably thorough investigation." *McGehee v. Central Intelligence Agency*, 697 F.2d 1095, 1105 (D.C. Cir. 1983). The date of the actual search, *if communicated to the requester*, is generally considered a reasonable cutoff date. *Id.* Here, BLM has failed to identify a start or final cut-off date for any search, and any inferences must be drawn against the agency to conclude the temporal scope of the search was not reasonable in design or implementation. *Id.*

Rulemaking documents confirm the failure to establish a cut-off date is unlawful and contrary to BLM policies. 67 Fed Reg. 64527 (October 21, 2002) (Final Rule) at 64527-28 ("In light of the decision in Public Citizen v. Department of State, 276 F.3d 634 (D.C. Cir. 2001(sic)), DOI has revised" the cut-off date used in "the final rule."). Subsequent FOIA caselaw sheds considerable doubt on the DOI rulemaking and confirms that the cut-off date remains a fact-specific inquiry that may warrant a later cut-off date than the date the search began if agency delay or other circumstances warrant. *See McClanahan v. United States DOJ*, 204 F. Supp. 3d 30, 47 (D.D.C. 2016). Although BLM established no cut-off date here, a rule-based cutoff date "is only valid when the limitation is consistent with the agency's duty to take *reasonable* steps to ferret out requested documents." *Id.*

RMW learned, for the first time in the second BLM declaration, that BLM halted searches on May 31, 2019, ECF No. 18 at 7, ¶21, and separately reviewed and produced the documents from August 19, 2019 until November 27, 2019. *Id.* at 10 ¶36. BLM did not conduct any search after May 31, 2019 to take into account information in the responsive records, confirming that BLM made no "effort to determine whether BLM personnel in any other office, such as the office of the BLM's Colorado State Director or the BLM's national office,

participated in the agency's decision-making […] thus may have responsive records in their control or possession."[4] *INFORM*, 611 F. Supp. 2d at 1185 (holding search unreasonable) *citing Friends of Blackwater*, 391 F. Supp. 2d at 121-22 (reasonableness is assessed by what agency knew after conducting the initial search.

Relief should ensure BLM cannot benefit from its unreasonable search by setting a cut-off date for a new search as the date of any such order, particularly in light of the May 31, 2019 cessation of all searches despite BLM's duty to consider information learned in the initial search.

## II.   BLM Improperly Withheld Agency Records not Subject to FOIA Exemption

### a.   BLM did not Carry its Burden to Withhold Records Under Exemptions 5

Genuine issues of material fact preclude BLM's summary judgment request on FOIA Exemption 5. *Anderson*, 907 F.2d at 936 (10th Cir. 1990). FOIA Exemption 5 allows an agency to withhold a narrow range of records involving the agency deliberative process and the attorney/client privileges of agency persons legitimately seeking legal advice. *Trentadue*, 501 F.3d at 1229. The 10th Circuit has confirmed that the plain language of Exemption 5 is to be narrowly construed and applied and has "[held] that factual materials are not privileged under Exemption 5 unless: (1) they are inextricably intertwined with deliberative materials, [..], or (2) their disclosure would reveal deliberative material […]. *Id.* at 1229, *citations omitted*.

In 2016, Congress imposed an additional burden for the agency to assert and demonstrate actual harms when asserting Exemption 5. *Ctr. for Investigative Reporting v. United States DOI*, 2020 U.S. Dist. LEXIS 61201, *11 (discussing cases applying 2016 FOIA Amendment). The

---

[4] RMW submitted a second FOIA request (CO-20-002/BLM-2020-00024) on October 3, 2019. Without identified search cut-off dates there is no way for RMW to know if there is a gap between the two searches.

D.C. Circuit confirmed that Exemption 5, as amended, requires the agency to say who prepared the agency records, what the agency records were generally about, how the agency records were ultimately used in the deliberative process, and demonstrate the actual, as opposed to generalized, harms that would flow from disclosing the particular record. *Id.*

Records that are not part of the deliberation over the policy or decision are not protected by Exemption 5. *ACLU v. DOD*, 2019 U.S. Dist. LEXIS 142261, at *30 (D. Mont. Aug. 21, 2019) ("Disclosure of a document that played no role in the substantive decision, like the communication plan here, will not discourage candid exchanges within the agency in the future."). Nevertheless, many of the withheld documents were edits to Briefing Papers and Communications Plans exchanged with the WO, Colorado, and TRFO personnel who did not conduct searches. ECF No. 18-7 at BLM1336, 2555, 2587, 2592, 2617, 3165, 3387, 3678, 3887, 4043, 4072. Similarly, BLM identifies generalized concerns, but no harm that would flow from public review of briefing papers prepared by local, state and WO personnel to let the WO Director know what the agency is up to. *See e.g. Id.* at BLM0856, BLM0861, BLM0890, BLM0897, BLM0904, BLM0911, BLM0918, BLM0925, BLM0937, BLM0942, BLM0947.

The *Vaughn* index does not identify actual harm flowing from any specific document in context of any decision falling within Exemption 5's ambit. *ACLU*, 2019 U.S. Dist. LEXIS 142261, at *30. Instead, the *Vaughn* index asserts boilerplate language that assumes the transparency purposes of FOIA would interfere with BLM discussions about how to carry out its communication campaigns and the National Environmental Policy Act ("NEPA") duties to ensure informed decisions and public involvement. ECF No. 18-7 at BLM0646, BLM0672, BLM1172; Ex. 15 at BLM0015 (redacted discussion of "ACEC alternatives" and "final edits from Connie" Clementson).

For example, there is a public benefit to disclosing alternatives identified by agency

personnel to ensure each alternative received NEPA disclosure and analysis. *N.M. ex rel.*

*Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 703 (10th Cir. 2009) ("NEPA requires

federal agencies to pause before committing resources to a project and consider the likely

environmental impacts of the preferred course of action as well as reasonable alternatives.").

The 10th Circuit relied on internal agency documents to set aside a BLM decision because

"NEPA does not permit an agency to remain oblivious to differing environmental impacts, or

hide these from the public" *Id*. at 707. No harm can flow from the disclosure of BLM's

discussion of potential alternatives, and there is a strong public interest in NEPA compliance.

The *Vaughn* index identifies no harm that could flow from disclosing BLM employees'

discussions of alternative approaches to hunting seasons as they relate to ACECs. ECF No 18-7.

at BLM1065, BLM1115. "Risk assessment" is not explained in context of the ACEC decision,

and does not constitute a decision that qualifies for Exemption 5 withholding. *Id*. at BLM0781.

BLM has identified no decision, and no specific harm, to support deliberative process privilege.

In order to be covered by the attorney-client privilege, a communication between a

lawyer and client must relate to legal advice or strategy sought by the client. *United States v.*

*Johnston*, 146 F.3d 785, 794 (10th Cir. 1998); *In the Matter of Grand Jury Subpoena*, 697 F.2d

277, 278 (10th Cir. 1983). "[T]he mere fact that an attorney was involved in a communication

does not automatically render the communication subject to the attorney-client privilege." *Motley*

*v. Marathon Oil Co.,* 71 F.3d 1547, 1550-51 (10th Cir. 1995). The mere involvement of an

attorney does not change the rule that "factual materials do not become privileged merely

because they represent a summary of a larger body of information." *Trentadue*, 501 F.3d at 1232

(*quoted by Broward Bulldog, Inc. v. United States* DOJ, 939 F.3d 1164, 1195 (11th Cir. 2019).

Yet, there is often no indication whether any persons for whom Exemption 5 is asserted is an attorney, within a protected group of decisionmakers, such as an employee receiving legal advice, or the actual decisionmaker. *See e.g.* ECF No. 18-7 at 9 (BLM1776), 12 (BLM1998), 14 (BLM2738). BLM provides no evidence to suggest any person listed in the *Vaughn* index maintained confidentiality with regard to the withheld records, or was even aware that there was any expectation that the information was confidential, giving rise to the summary judgment inference that the information was shared, and privilege waived.

BLM's burden is not met where the *Vaughn* index and declarations do not provide information on each document that is detailed enough "to permit the court to determine whether a sufficient factual basis exists to support the agency's refusal to disclose the information at issue." *Public Employees for Envtl. Responsibility v. U.S. EPA*, 978 F.Supp. 955, 960 (D.Colo.1997). BLM does not meet the high "level of review and analysis required to justify withholding all or part of an agency record under the deliberative process privilege and FOIA Exemption 5." *INFORM*, 611 F. Supp. 2d at 1189.

**b. Reasonably Segregable Factual Information is Withheld Without Justification**

Entire documents were withheld pursuant to Exemption 5 based on the combination of deliberate process and attorney-client privilege. Doc. # 18-7. The size of the redacted documents range from one page to more than 70 pages. However, there is no pinpoint site to support any specific withholding. Summary judgment cannot be granted in favor of the BLM where detailed information was not provided to support the Movant's burden regarding reasonable segregation. *Trentadue*, 501 F.3d at 1229. Summary judgment in favor of BLM is not available where the *Vaughn* index and declaration prepared during the litigation merely parrot the statutory language to justify the redaction and withholding of entire documents or large portions of documents *en*

*masse. Anderson*, 907 F.2d at 942 (10th Cir. Utah 1990).

### c. Defendants failed to Contemporaneously Identify Privileged Documents

Lastly, BLM fails to identify any "indication on the [document] itself or in the transmitting email that the content was subject to the attorney client privilege," or other indication of Exemption 5 or Exemption 6 confidentiality. *Cherokee Nation v. Salazr*, 986 F. Supp. 2d 1239, 1249 (N.D. Okla. 2013). While not dispositive, such a disclaimer on the communication provides contemporaneous evidence of privileged information. *Id.* The absence of a disclaimer supports the inference that the steps necessary to overcome the FOIA policy of openness - establishing and maintaining confidentiality - were not taken. Summary judgment standards support an inference that BLM employees involved in the ACEC Amendment, most of whom did not conduct any search, did not treat the information as confidential or privileged. *Schwarz*, 1998 U.S. App. LEXIS 24885, at *4 (10th Cir. October 7, 1998) (unpublished).

### III. The Court has Discretion to Compel a Variety of Remedies

An agency's "failure to produce responsive records is a continuing FOIA violation." *INFORM*, 611 F. Supp. 2d at 1183-1184. The standard FOIA remedies applicable to Claim 1[5] include an order directing the agency to disclose all responsive agency records, to carry out a new search, and/or to conduct *in camer*a review of asserted FOIA Exemptions. *Id.* at 1189.

The Court need not provide the agency with yet another bite at the apple to explain its withholdings, and has authority and discretion to compel disclosure of all agency records that are not justified by the *Vaughn* index. *Anderson*, 907 F.2d 936, 942, (10th Cir. 1990). Alternatively, unlawful withholdings due to inadequate justification of FOIA Exemptions can be addressed by

---

[5]BLM did not seek summary judgment on Claim 2 or Claim 3. ECF No. 18 at 1, FN 1.

a combination of relief, including preparation of a compliant *Vaughn* index in accordance with any findings the Court may enter as to the facts, law, or circumstances of the withholdings, *in camera* review, disclosure of documents, and/or other relief the Court may deem appropriate. *Id*.

Unlawful withholding due to inadequate search can be remedied by ordering a new search, based on the findings as to scope of the search addressed above. To inform this remedy, BLM should be compelled to produce, by filing with the ECF system, each undisclosed "certification of search form" and any other documentary evidence prepared by persons conducting the original searches. ECF No. 18 at 7, ¶23. Similarly, the inferences and information developed as to persons likely to possess responsive records based on documents produced during this litigation, warrants a provision directing each person conducting the new search to make a contemporaneous record of the search and its results, to be filed with the Court as evidence to assess BLM compliance with the Order. This approach is consistent with the initial disclosure requirements of the Civil Rules, promotes judicial efficiency, and is likely to resolve this litigation without further proceedings.

Although an agency responding to a FOIA request within statutory deadlines is not required to create new records, "FOIA imposes no limits on courts' equitable powers in enforcing its terms." *Payne v. U.S.*, 837 F.2d 486, 494 (D.C. Cir. 1988) *citing Renegotiation Bd. v. Bannercraft Clothing Co*., 415 U.S. 1, 19-20 (1974). Options available to the District Court to conduct *de novo* review and enforce FOIA's purposes has been succinctly summarized by the 10th Circuit. *Anderson*, 907 F.2d at 942.

## CONCLUSION

For the above reasons, RMW respectfully request that the BLM's Motion for Summary Judgment be DENIED.

RESPECTFULLY SUBMITTED May 15, 2020:

s/ Matthew Sandler
**Matthew Sandler**
Rocky Mountain Wild
1536 Wynkoop St. Suite 900
Denver, CO 80202
303-579-5162
Matt@rockymountainwild.org

**Travis E. Stills**
Energy & Conservation Law
1911 Main Ave., Suite 238
Durango, Colorado 81301
(970) 375-9231
stills@frontier.net
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2020 I served a copy of this Motion an all parties using the

CM/ECF system, unless otherwise noted below.

 s/ Matthew Sandler
**Matthew Sandler**