**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-03171-KLM

ROCKY MOUNTAIN WILD, INC., a Colorado non-profit corporation,
    Plaintiff,

    v.

UNITED STATES BUREAU OF LAND MANAGEMENT, a federal agency; and
UNITED STATES DEPARTMENT OF INTERIOR, a federal agency,
    Defendants.

---

## CROSS MOTION FOR SUMMARY JUDGMENT

    Plaintiff, through Counsel, files this Cross Motion for Summary Judgment based on Defendants' failure to meet the evidentiary burdens the Freedom of Information Act places on federal agencies.

## I.  INTRODUCTION AND SUMMARY

    For the reasons set out in the Response (ECF No. 21), and the arguments and rebuttal evidence provided herein, Plaintiff requests that the Defendants be ordered to carry out and document a FOIA-compliant search and release all agency records that are not justified as subject to FOIA Exemptions in the agency *Vaughn* index, and provide a means for Plaintiff to obtain and present evidence establishing the circumstances of this case.

    In the alternative, or in conjunction with an order directing additional FOIA searches and disclosures, Plaintiff requests an order on summary judgment that directs Defendants to make initial Rule 26 disclosures (e.g. agency records prepared during FOIA compliance, certified versions of agency letters, determinations, and documents released). Such an order would allow Plaintiff the opportunity to propound written discovery and take the depositions of the agency

personnel. Likely deponents include Laura Garcia Hinojosa, who signed the declaration that is the sole evidence the Bureau of Land Management ("BLM") offered (ECF No. 18-1, Declaration of Ms. Garcia Hinojosa) and Connie Clementson, the Field Office Manager who updated the public and other officials on the underlying activities for many years, but did not search for records. ECF No. 21 at ¶47, ECF Nos. 21-11 through 21-17.

BLM has not provided first hand documentary evidence of the searches conducted to meet its FOIA duties. Yet, the Declaration confirmed that relevant documentary evidence exists, including "certification of search form[s]" and other documentation regularly prepared when BLM responds to a FOIA request. ECF No. 21 at ¶23, ECF No 18-1 at ¶23. BLM has not provided the documents and the Declaration lacks details required in an

> affidavit reciting facts which enable the District Court to satisfy itself that all appropriate files have been searched, i.e., that further searches would be unreasonably burdensome. Such an affidavit would presumably identify the searched files and describe at least generally the structure of the agency's file system which makes further search difficult.

*Church of Scientology of Cal. v. IRS*, 792 F.2d 146. (D.C. Cir. 1986) (Scalia, J.) *quoted by Trentadue v. FBI*, 572 F.3d 794, 807 (10th Cir. 2009) (resolving FOIA search litigation using *de novo* review burdens and procedures). The litigation Declaration lacks the basic information required to conduct *de novo* FOIA review of the agency searches delegated by Laura Garcia Hinojosa to other BLM personnel to coordinate, design, and carry out. 5 U.S.C. §552(a)(4)(B). The relevant documents and testimonial evidence are in the agency's sole possession, and *de novo* review on the facts of the present case supports summary judgment relief that allows Plaintiff to review relevant documentary evidence and conduct discovery in preparation for further proceedings in this case. *Id*.

It is a fundamental basis of administrative law that review of an agency's "action must be measured by what the [agency] did, not by what it might have done." *SEC v. Chenery Corp.*, 318 U.S. 80, 93-94 (1943) *quoted by Michigan v. EPA*, 135 S. Ct. 2699, 2711 (2015). This proposition is particularly true in FOIA litigation since judicial review is <u>not</u> conducted on an Administrative Procedure Act administrative record, but requires *de novo* development and consideration of evidence in the district court. 5 U.S.C. §552(a)(4)(B). A *post hoc* declaration speculating on what actions may have been taken by other persons, without disclosure of available documentary evidence, cannot meet the plain meaning of "*de novo*" that Congress used in the statute, *id.*, and the Tenth Circuit uses to create a judicial record to apply a "standard of reasonableness [that] is dependent upon the circumstances of the case." *Trentadue*, 572 F.3d at 797 (reviewing agency search), *Anderson v. Health & Human Servs.*, 907 F.2d 936, 942 (10th Cir. 1990) (describing various "procedures […] to develop an adequate factual basis for review" in FOIA litigation).

## II.    MOVANT'S STATEMENT OF FACT

**1.** All information regarding the actions taken by BLM to respond to the FOIA Request is in BLM's sole possession. Plaintiff lacks access to the full set of information necessary to provide positive evidence of the circumstances and the actions BLM took, or did not take, in responding to the FOIA Request.[1]

**2.** The Declaration (ECF No. 18-1) and *Vaughn* index (ECF No. 18-7) filed with the April 17, 2020 BLM Motion for Summary Judgment are not the same declaration (ECF No. 21-1) and

---

[1] This statement of fact relies on documentary evidence where available, but necessarily includes reasonable conclusions drawn from inquiry and normal agency practices.

*Vaughn* index (ECF No. 21-2) provided to Plaintiffs pursuant to the March 19, 2020 deadline. ECF No. 16.

**3.** The March 19, 2020 declaration provides a sworn and accurate portrayal of Ms. Garcia Hinojosa's limited personal knowledge of the search BLM carried out. ECF No. 21-1 at ¶15. The single paragraph in the March 19, 2020 declaration, *id.*, was expanded without explanation into a 14 paragraph *post hoc* rationalization. ECF No. 18-1. It is reasonable to conclude that government attorneys prepared the document executed at 11 am on April 17, 2020. *Id.* at 19.

**4.** The March 19, 2020 *Vaughn* index (ECF No. 21-2) differs materially from the undated *Vaughn* index filed with the Court. ECF No. 18-7. Both *Vaughn* indexes lack attribution and signature. Because the April 17, 2020 *Vaughn* index was filed by counsel using the ECF system, it is reasonable to conclude the filing attorney prepared the *Vaughn* index. D.C.COLO.LCivR 5.1(a) (signature requirements), Fed. R. Civ. P. 11(a) (same).  It is also reasonable to conclude the *Vaughn* index was ghost written by unnamed attorneys in the Regional Solicitor's Office. ECF No. 18-1 at ¶46.

**5.** ECF No. 18-2 is a true and correct copy of the FOIA Request. The May 15, 2019 FOIA Request in this matter was given the number, BLM-2019-00726/CO-19-028 upon receipt.

**6.** ECF No. 18-3 is a true and correct copy of the agency's August 19, 2019 response.  The August 19, 2019 letter does not contain a final determination on the FOIA request.

**7.** ECF No. 18-4 is a true and correct copy of the agency's October 15, 2019 response.  The October 15, 2019 letter does not contain a final determination on the FOIA Request.

**8.** ECF No. 18-5 is a true and correct copy of the agency's November 25, 2019 response.  The November 25, 2019 letter does not contain a final determination on the FOIA Request.

**9.** ECF No. 18-6 is a true and correct copy of the agency's November 27, 2019 response.  The November 27, 2019 letter alleges a final determination on the FOIA Request.

**10.** The Complaint was filed November 7, 2019. ECF No. 1. No Answer has been filed.

**11.** Associate Colorado BLM State Director Gregory P. Shoop made BLM's final determination on the FOIA Request on November 27, 2019. ECF No. 18-6.  State Director Shoop provided no testimony or documentary evidence to support his determination. State Director Shoop was in regular contact with BLM personnel regarding the subject matter of the request who did not conduct searches, including Kevin E. Oliver, BLM Policy Advisor to BLM's Office of the Director *See e.g.* ECF No. 21-9 at BLM1753-1774, ECF No. 21-6 at 1816-1838. Mr. Shoop possesses undisclosed information relevant to BLM's processing of the FOIA request.

**12.** BLM Colorado's response to the FOIA Request was coordinated by Laura Garcia Hinojosa. ECF No. 18-1 at ¶30.  Ms. Garcia Hinojosa possesses undisclosed information relevant to BLM's processing of the FOIA request.

**13.** BLM's Tres Rios Field Office ("TRFO") response to the FOIA Request was coordinated by Connie Clementson. *Id.*  Ms. Clementson, TRFO Field Manager, oversaw and was involved with this decisionmaking process. Connie Clementson has been involved in the underlying decisions since at least 2007, when the ACEC Amendments were first mentioned in the 2007 draft resource management plan for the region (if not before) and then again in 2013. ECF No. 21-14 at 2 (telluridenews.com), ECF No. 21-23 at 3 (2017 RAC minutes) ("10 years since [ACECs] were nominated"), ECF No. 21-20 (2013 Consultation letter). She has been reminding each of the county commissions of the pending ACEC amendments in quarterly updates for many years. ECF No. 21-14 at 2. She again informed the counties and community groups of the underlying decisions in early 2015 when she initiated the process to have the ACECs published in the

Federal Register. *Id*. Ms. Clementson communicated with all levels of the BLM regarding the

project. *See e.g*. ECF No. 21-9 at BLM1753-1774, ECF No. 21-6 at 1816-1838.

14. Ms. Clementson's deep involvement in the underlying BLM activities were reported by the

news media, including articles in the Durango Herald and Telluride Watch. ECF Nos. 21-13, 21-

14. Her role as a decisionmaker and spokesperson for the BLM in the community outreach

efforts are documented by BLM's Resource Advisory Committee. ECF No. 21-23 (March 31,

2017 Meeting Minutes); ECF No. 21-22 (June 13, 2019 Meeting Minutes). Neither set of

Meeting Minutes were disclosed.

15. Ms. Clementson's Field Manager Report provided the following update:

> ACEC Amendment - Comment period closes April 22, 2019. The BLM published a
> Notice of Availability for the Draft Resource Management Plan Amendment and
> Preliminary Environmental Assessment, which analyzed 17 proposed Areas of Critical
> Environmental Concern (ACEC) in San Miguel, San Juan, Dolores, Montezuma, and
> Montrose counties. The preferred alternative would designate one proposed ACEC (Mesa
> Verde Escarpment) and reaffirm the designation of two existing ACECs (Ancestral
> Puebloan and Gypsum Valley) totaling 14,335 acres. The size of the existing ACECs
> would be reduced to provide for more focused management of the resources requiring
> special protection. The Dry Creek Basin and Northdale ACEC proposals, both of which
> contain habitat for Gunnison Sage-Grouse, were deferred to the Gunnison Sage-Grouse
> Range-wide RMP Amendment. The GUSG Amendment will provide a range of
> management measures and outcomes for the areas, including possible ACEC designation.

*Id.* at 2. Ms. Clementson created and obtained agency records responsive to the FOIA Request.

16. Ms. Clementson did not search for responsive records. ECF 18-1. Ms. Clementson provided

no testimony or documentary evidence about the actions she took. Ms. Clementson possesses

responsive agency records. *Id*. Ms. Clementson possesses undisclosed documents and

information relevant to BLM's processing of the FOIA request. *Id*.

17. BLM Colorado's response to the FOIA Request was coordinated by Brian St. George. ECF

No. 18-1 at ¶31. As early as September 29, 2019, Mr. St. George was (acting) BLM Deputy

Assistant Director for Resources and Planning. ECF No. 24 at 1, ECF No.25. Mr. St. George provided no testimony or documentary evidence about the actions he took. Mr. St. George possesses undisclosed information relevant to BLM's processing of the FOIA request.  Mr. St. George used unofficial channels to communicate with the WO. ECF No. 21-10 at 1.

**18.** BLM's Washington Office ("WO") personnel participated in the TRFO ACEC decision through briefings, internal discussions, media efforts, and general guidance and directives. ECF Nos. 21-3, 21-4, 21-5, 21-6, 21-7, 21-8, 21-9, 21-10, 18-7 (Vaughn Index) at 3 (BLM0567), 14 (BLM2617 - memo from Gregory Shoop), 15 (BLM2755 - memo circulated among WO personnel), 15 (BLM2776 - documents circulated among WO personnel to inform Director Briefing); 18 (BLM3413 - Deputy Director briefing), 18 (BLM3422- Director briefing).

**19.** No BLM employees assigned to the WO searched for responsive records. BLM employees assigned to the WO possess information relevant to BLM's processing of the FOIA request.  Mr. St. George did not search WO files. ECF No. 18-1 at ¶41.a.

**20.** BLM personnel assigned to the WO are likely to have responsive records that have not been produced. WO-### is a BLM organizational code used to denote BLM personnel assigned to the WO, despite their physical location. Mr. St. George is assigned WO-100, which includes persons who directly report to BLM's National Director. ECF No. 21-24 (organizational chart). Documents released by BLM reference the involvement of WO personnel in the underlying activities addressed by the FOIA Request, including the BLM Director, Deputy Director, WO-100, WO-200, WO-210, WO-300, and WO-400. ECF No 21-5 at BLM2468, ECF No. 21 at ¶39.

**21.** Unless directed by this Court, BLM will not conduct a WO search.

**22.** Laura Garcia Hinojosa's declaration is based on review of agency records and FOIA procedures that have not been disclosed to Plaintiff. ECF No. 18-1 at ¶44.  Ms. Garcia Hinojosa

did not contact the agency personnel who conducted searches to confirm whether or not they followed normal procedures when processing the request. *Id*. The declaration lacks information about how Ms. Garcia Hinojosa gained information about actions taken by third parties. *Id*.

**23.** BLM policy requires that FOIA Officers and agency personnel maintain records of the agency's FOIA searches. 43 CFR 2.68 (a) ("Each bureau must preserve all correspondence pertaining to [FOIA] requests that it receives […]."); ECF No. 18-1 at ¶43 (referencing undisclosed "certification of search form" sent to Ms. Garcia Hinojosa).

**24.** Ms. Garcia Hinojosa created, obtained, and maintained contemporaneous written records and correspondence documenting the agency's FOIA searches that have not been produced. *Id*.

**25.** Deputy Director St. George, prepared and maintained contemporaneous written records and correspondence documenting BLM's FOIA searches that have not been produced to Plaintiff. *Id*.

**26.** Other BLM persons in Colorado, including Keith Fox and Ms. Clementson, maintained contemporaneous written records and correspondence documenting BLM's FOIA searches that have not been produced to Plaintiff. *Id*.

**27.** BLM did not produce any contemporaneous written records or correspondence prepared for the purpose of documenting the FOIA searches. *Id*.  BLM will not produce the certification of search forms and other similar records and correspondence relied upon by Ms. Garcia Hinojosa absent a discovery request and/or and order of this Court. *Id*. at ¶44. Information establishing the circumstances of the FOIA searches is readily disclosed without undue burden on the BLM and without implicating any recognized privilege.

**28.** No practical barrier exists to production of the contemporaneous records and correspondence of BLM to document the circumstances and actions taken to carry out FOIA searches.

**29.** Laura Garcia Hinojosa, Brian St. George, Keith Fox, Gregory Shoop, Connie Clementson, and Kevin Oliver are federal government employees with relevant information who can easily be made available for a first round of depositions in BLM's Denver, Colorado offices, or by other means consistent with current Covid-19 considerations.  A second round of depositions may include other BLM personnel referenced in Ms. Garcia Hinojosa's Declaration or identified through information produced in response to discovery and/or additional FOIA searches.

**30.** The FOIA Request put BLM on notice that "[r]esponsive records may be maintained in various levels of the BLM's organizational structure, including the Tres Rios Field Office, State and Regional Offices, and Washington D.C. Offices." ECF No. 1-1 at 1.

**31.** It is BLM policy that the Department of the Interior's Office of the Solicitor issue a document retention order to notify all federal agency persons likely to have records responsive to a FOIA request that they must preserve such documents. 43 C.F.R. § 2.68 (b) ("Materials that are identified as responsive to a FOIA request will not be disposed of or destroyed while the request or a related appeal or lawsuit is pending.").

**32.** A document retention letter was issued by, or on the behalf of, BLM during processing of the FOIA Request. *Id*. The letter was sent to all persons listed in Ms. Garcia Hinojosa's declaration. ECF No. 18-1 at ¶¶35, 41. Document retention letters provide official documentation and contemporaneous documentary evidence of the steps BLM took to respond to the RMW FOIA request, and identifies persons BLM believed were likely to possess responsive records.

**33.** In preparing the *Vaughn* index, all persons who created or obtained withheld records circulated by emails were not contacted by the BLM litigation team to ensure the withheld information was not shared outside the persons entitled to the asserted exemption or privilege.

**34.** Once FOIA litigation is imminent or has been filed, it is federal policy that the Department of Justice and/or Department of Interior Office of the Solicitor issue a litigation hold to all federal agency persons likely to have information relevant to the FOIA request.[2]  A document retention letter was issued by, or on behalf of, BLM for the FOIA Request during this litigation.  A document retention order was not sent to all persons listed in Ms. Garcia Hinojosa's declaration. ECF No. 18-1 at ¶¶35, 41.  A document retention order was not sent to all persons listed in the *Vaughn* index. ECF No. 18-7. Document retention letters provide official and contemporaneous documentation of how BLM maintained confidentiality and responded to the FOIA request.

**35.** Ms. Garcia Hinojosa did not contact each agency employee that carried out the searches to determine whether her declaration was accurate. ECF No. 18-1, ECF No. 21-1. Ms. Garcia Hinojosa did not contemporaneously document the steps BLM took to respond to the FOIA request during the litigation. Ms. Garcia Hinojosa took no steps to confirm whether or not BLM employees listed in the declaration received training in FOIA searches or document retention.

**36.** BLM allowed each custodian to determine unique search terms relevant to their own subjective vocabulary related to records they created, or obtained from others. ECF No. 18-1 at ¶34. BLM did not utilize a standardized set of search terms to ensure a broad search was conducted using a comprehensive set of search terms aimed at collecting records labeled and transmitted by a wide range of BLM staff. *Id.*

---

[2]The normal preservation duties apply to BLM. *United States v. Fed. Res. Corp.*, 2012 U.S. Dist. LEXIS 65430, at *8 (D. Idaho May 9, 2012) ("if a party 'reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents.'") *quoting Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003).

**37.** The Complaint put DOJ on notice that "[r]esponsive records may be located at all levels of the BLM, including local, regional and its Washington D.C. Offices." ECF No. 1 at ¶17.

**38.** The responsive documents confirm that BLM staff in the WO were involved in communications and briefings about the TRFO ACEC Amendment process and decision. *See supra ¶18;* ECF No. 21 at ¶¶39-44. No BLM person designed and carried out a WO search. ECF No. 18-1. A litigation hold was not sent to Kevin Oliver or any other BLM WO staff to notify them of the responsibility to preserve all agency records potentially responsive to the FOIA Request. *Id.* The *Vaughn* index does not mention Kevin Oliver, whose emails were redacted. *Compare* ECF No. 18-7 *with* ECF No. 21-9 at BLM1753-54 (email conveying WO requests).

## III.   ARGUMENT

On *de novo* review of FOIA claims, the parties must support their positions with admissible evidence, to be considered pursuant to Rule 56 burdens. *World of Sleep, Inc. v. La-Z-Boy Chair*, Co., 756 F.2d 1467, 1474 (10th Cir. 1985) (*citing* Fed. R. Civ. P. 56(e)); *Gray v. Phillips Petroleum Co*., 858 F.2d 610, 613 (10th Cir. 1988). The common use of affidavits in FOIA litigation "does not mean, however, that agencies get to phone it in when defending their FOIA conduct. Courts require that any supporting affidavits are "relatively detailed[,] . . . nonconclusory[,] and . . . submitted in good faith.'" *Am. Ctr. for Law & Justice v. United States Dep't of State*, 289 F. Supp. 3d 81, 92 (D.D.C. 2018) *quoting Goland v. CIA*, 607 F.2d 339, 352, 197 U.S. App. D.C. 25 (D.C. Cir. 1978).  Because requesters lack access to information to pursue FOIA claims, an "approach [that] places the burden on the party seeking disclosure, [is] in clear contravention of the statutory mandate." *Vaughn v. Rosen*, 484 F.2d 820, 828 (1973).

### A.   Agency FOIA Declarations do not Warrant Judicial Deference

The Circuit Courts' incremental drift away from the words of the statute does not require this Court to create a due process or separation of powers problem when assessing exemptions or searches. *Withrow v. Larkin*, 421 U.S. 35, 58 n.25 (1975). "Where, as here, that examination [of the plain language of the statute] yields a clear answer, judges must stop." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019). FOIA requires *de novo* review of agency withholding of documents not subject to a FOIA Exemption. 5 U.S.C. 552(a)(4)(B).

By contrast, Congress provided a different judicial review provision - applicable only to FOIA fee requests - that alters the *de novo* standard, "[p]*rovided*, that the court's review of the matter shall be limited to the record before the agency." 5 USCS § 552 (a)(4)(A)(vii). No such limitation was placed on FOIA's general *de novo* judicial review provision. 5 U.S.C. 552(a)(4)(B). The unaltered *de novo* review standard is applicable to the present case. *Id*.

Congress also specified the limited circumstances when deference is afforded an agency's FOIA conclusions during *de novo* review. 5 U.S.C. 552(a)(4)(B). In carefully considering FOIA's plain language, as amended multiple times over the years, the 11th Circuit recently, and correctly, concluded that Congress has only "approved of deference within the specific context of Exemption 1" and Exemption 3, along with technical feasibility and reproducibility. *Broward Bulldog, Inc. v. United States DOJ*, 939 F.3d 1164, 1183 (11th Cir. 2019). *De novo* review, not agency deference, and not review limited to an administrative record, is the statutory standard Congress directed the Courts to apply to agency assertions of all other FOIA Exemptions. *Id*. (reviewing legislative history of FOIA).

Similarly, FOIA contains no suggestion that the general *de novo* review provision is eroded as to agency searches and there is no language directing Courts to defer to agency search declarations. *Id*. FOIA defines "'search' [to mean] review, manually or by automated means,

agency records for the purpose of locating those records which are responsive to a request." 5 U.S.C. § 552(a)(3)(C).  BLM possesses no special expertise in carrying out FOIA searches, and findings based on a declaration containing a reconstructed account asserting the adequacy of its searches deserves no deference, particularly on the procedures BLM urges in the present case, which are even more restrictive than administrative record review procedures. *SEC v. Chenery Corp.*, 318 U.S. 80, 93-94 (1943) *quoted by Michigan v. EPA*, 135 S. Ct. 2699, 2711 (2015).

The Tenth Circuit took a similar and negative view of limiting judicial review and deferring to the agency when examining an agency application of the National Environmental Policy Act, a general statute that BLM does not administer. *Park County Resource Council, Inc. v. United States Dep't of Agriculture*, 817 F.2d 609, 619-20 (10th Cir. 1987), *overruled on other grounds, Village of Los Ranchos de Albuquerque v. Mars*h, 956 F.2d 970, 973 (10th Cir. 1992). The Tenth Circuit explained that agency "deference envisioned under this rationale is appropriate when the disputed issue is one expressly delegated to an agency that deals exclusively with the area and so has refined an expertise in its nuances." *Id.* at 620. Like NEPA, BLM possesses no special expertise in determining whether a search complies with FOIA in a given instance and BLM possesses no special expertise in FOIA's nuances. *Id.*

In short, FOIA's *de novo* judicial review provision - unlike the fee waiver provision that is limited to an administrative record and the matters where the statute directs the Court to defer to the agency - must take place within an adversarial proceeding that provides due process and that could survive appellate review. *Anderson*, 907 F.2d at 941.  BLM has instead provided a single declaration, an unsigned *Vaughn* index, and there have been no Rule 26 disclosures, except for the May 7, 2020 production of Bates numbered documents, leaving Plaintiff and the Court without the ability to meaningfully engage the adversarial process and *de novo* review. *Id.*

FOIA's plain language "yields a clear answer" on the need for "*de novo*" judicial review on a record developed according to the Federal Rules of Civil Procedure, and despite adventurous interpretations urged by the agency and other courts, district court "judges must stop" there and apply FOIA as written. *Id. quoting Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019).  Notably, similar to the recently reversed D.C. Circuit Opinion on the meaning of "commercial information," the leading search case in the Tenth Circuit does not deviate from FOIA's "*de novo*" language, and therefore does not prevent this Court from providing the relief sought by this Cross Motion. *Trentadue,* 572 F.3d at 807.

### B.    BLM did not Produce Evidence of a Reasonable Search

Judicial findings of fact in a FOIA case must be made *de novo*, based on evidence developed and admitted via the fact-finding procedures used in civil litigation. 5 U.S.C. §552(a)(4)(B).  Ms. Garcia Hinojosa's declarations addressing the agency search are little more than a series of conclusory statements based largely on undisclosed documents and vague memories of other agency personnel involved in the search. ECF No. 18-1, ECF No. 21-1 at ¶15. The declarations do not provide the required detail about how each carried out electronic searches, conducted follow-up based on responsive records, or conducted manual searches of the physical files. See *Rodriguez v. Dep't of Defense*, 236 F. Supp. 3d 26, 38-41 (D.D.C. 2017) (reviewing search declarations that failed to answer "obvious questions about *how* [individual agency personnel] conducted the physical and electronic searches).

The declaration does confirm that agency personnel prepared written records to document the steps taken to fulfill FOIA requests, but no search records were disclosed to Plaintiff and no search documentation was provided to the Court to support the conclusory statements made in the declarations. ECF No. 18 at 7 ¶23, *citing* ECF No. 18-1 at ¶37.  Although Plaintiff does not

yet have a means to fully establish the circumstances of the FOIA search, positive evidence

establishes that although Ms. Clementson did not conduct a search, she was deeply involved in

the ACEC decisionmaking and almost certainly possesses responsive records.  Ms. Clementson's

failure to search, the likelihood that she possesses agency records, and information required to

design a FOIA-compliant search, are readily obtainable through Plaintiffs' discovery,

The declaration confirms that BLM personnel document their searches. ECF No. 18-1 at

¶23 (referencing "certification of search form"). It is unreasonable to believe that no other

documents or correspondence were prepared by the custodians or the BLM personnel that

coordinated the search for records. The evidentiary burden is on BLM, but BLM did not produce

the evidence in its possession for scrutiny or judicial review or otherwise demonstrate a "sincere

policy of maximum disclosure" required by FOIA. *Vaughn v. Rosen*, 484 F.2d 820, 828 (1973).

Therefore, Plaintiff should be provided a means to obtain and present that material to the Court.

As set out in the Response, incorporated here by reference for purposes of judicial

economy, BLM's reliance on Ms. Garcia Hinojosa's declaration (ECF No. 18-1) does not satisfy

the *de novo* judicial review necessary to confirm whether she and other BLM personnel met the

burdens FOIA places on an agency to carry out a FOIA compliant search for responsive agency

records. ECF No. 21 at 10-15. As more fully set out in the Response, *id.*, BLM has not submitted

admissible evidence on the agency search, including: 1) the scope of the search based on broad

interpretation of the request that the agency adjusted based on facts learned during the search

(*Id.*); 2) the methods actually used to carry out the search (*Id.*), and; 3) the "cut-off dates" used

when carrying out the searches. *Rocky Mt. Wild, Inc. v. Forest Service,* 138 F. Supp. 3d 1216,

1221 (D. Colo. 2016) *citing Friends of Blackwater v. U.S. Dep't of Interior*, 391 F. Supp. 2d 115,

122 (D.D.C. 2005).

FOIA's *de novo* review standard cannot be satisfied without a litigation mechanism that allows Plaintiff, and the Court, to test the basis and accuracy of Ms. Garcia Hinojosa's conclusory statements. *Id*. Notably, no person involved in conducting a search for agency records responsive to the FOIA request, including Brian St. George, Keith Fox, nor any person listed in the declaration, provided a declaration of their own, thereby denying Plaintiff and the Court of the evidence normally relied upon for the adversarial process used during summary judgment. *Anderson*, 907 F.2d at 941, 946-947. Records detailing the search were created while responding to the FOIA Request, and this documentary evidence would normally be disclosed pursuant to Rule 26 initial disclosures, and thereby allow Plaintiffs to use the adversarial process to test statements made in the Declaration to determine whether to pursue discovery or otherwise present its case.  The Rule 26 disclosures that characterize civil litigation were not made in this litigation, and all documentary evidence regarding the search remains in the agency's sole possession.  Simply put, relying on a single search declaration (ECF No. 18-1) prepared after the Court-imposed deadline (ECF No. 16, 21-1), based on undisclosed documentation of the searches actually conducted (ECF No. 18-1 at ¶23), "seriously distorts the traditional adversary nature of our legal system's form of dispute resolution." *Vaughn*, 484 F.2d 820, 824 (1973).

BLM's approach requires Courts to extend blind deference to whatever declaration the agency prepares during litigation. This level of deference to an agency that is regulated by a statute like FOIA has been eroded, and perhaps eliminated, by a recent Supreme Court opinion addressing the deference accorded an agency when interpreting and implementing a statute it does not administer. *Epic Sys. Corp. v. Lewis*, 200 L.Ed.2d 889, 908 (U.S. 2018). The Supreme Court noted the problems with deference to "[a]n agency eager to advance its statutory mission, but without any particular interest in or expertise with a second statute . . . ." *Id*.  Recognizing

that Courts, not agencies, interpret the laws and adjudicate agency compliance with federal laws, the Opinion explained that "[t]o preserve the balance Congress struck in its statutes, courts must exercise independent interpretive judgment." *Id*.  While *Epic* focused on *Chevron* deference, the same theory equally applies to BLM's conflicting interests in transparency and shielding aspects of its decisionmaking from the public. FOIA's *de novo* review cannot be exercised on a search declaration setting out what may have been done, particularly when evidence of what was done and how the search was conducted is readily obtainable through Rule 26 disclosures that would inform and narrow Plaintiff's discovery.

More recently, the Supreme Court confirmed that "courts aren't free to rewrite clear statutes under the banner of our own policy concerns." *Azar v. Allina Health Servs*., 139 S. Ct. 1804, 1815 (2019).  FOIA's plain language requires "*de novo*" review. 5 U.S.C. §552(a)(4)(B). FOIA "d*e novo*" review is carried out pursuant to the Federal Rules of Civil Procedure, with no alteration by the Colorado District's AP Rules. D.C.COLO. LAPR 1.1 (c) (FOIA not listed in actions subject to AP Rules). Familiar authorities that contradict FOIA's plain language must be reconsidered with great care, since review procedures and assignment of burdens that more closely resemble administrative record review than FOIA's *de novo* review procedures may have been overturned by implication.

The Tenth Circuit recently confirmed that the Civil "Rules 'really regulate[] procedure.'" *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1254 (10th Cir. 2018) *quoting Sibbach v. Wilson & Co*., 312 U.S. 1, 14, (1941). The Civil Rules "do not 'abridge, enlarge or modify any substantive right.'" *Id. quoting* 28 U.S.C. § 2072(b). "In other words, they bear on how a claim gets litigated, but not the underlying subject matter of the claim or the contours of substantive law." *Id*.  Here, FOIA commands that the District Court "shall determine the matter *de novo."* 5 U.S.C.

§552(a)(4)(B). However, BLM asks the Court to adopt *ad hoc* procedures that effectively rewrite FOIA's *de novo* review language out of existence when reviewing FOIA searches by eliminating Plaintiff's role in establishing a judicial record. Courts do have discretion, but BLM's single declaration approach leads the Court away from FOIA's clear statutory language and ignores BLM's own policies (*e.g.* search documentation, document retention, litigation holds) that facilitate judicial review of agency FOIA searches. *Vaughn*, 484 F.2d 820, 828 (1973).

Available evidence and FOIA provide a clear answer - BLM has proffered an untimely search declaration based on the FOIA-disclosed records and assumption about procedures, but has not produced admissible documentary evidence that would inform *de novo* review and establish the circumstances of the search the agency personnel actually carried out. *Trentadue*, 572 F.3d at 797. As set forth above, the positive evidence supports entry of summary judgment finding BLM's search was not reasonably likely to disclose all responsive records. Relief should require BLM disclosures, and afford Plaintiff the opportunity to access the full body of evidence and information in the sole possession of the agency as to how BLM personnel actually carried out FOIA searches.

### C.    BLM Failed to Support its Exemption 5 and Exemption 6 Withholdings

Similarly, Plaintiff's Response is incorporated by reference to establish that the *Vaughn* index (ECF No. 18-7) BLM offered to support withholding of agency records, in whole and in part, does not address the elements of the asserted FOIA Exemptions and does not provide "the district court […] an adequate factual basis on which to base its decision." *Casad v. United States HHS*, 301 F.3d 1247, 1251 (10th Cir. 2002) *citing* 5 U.S.C. 552(b).

The Supreme Court recently interpreted the undefined FOIA term 'confidential' as used in FOIA. *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2362 (2019). The Supreme

Court "ask[ed] what that term's 'ordinary, contemporary, common meaning' was when Congress enacted FOIA in 1966." *Id.*  The answer reversed longstanding D.C. Circuit precedent in an Opinion that emphasized that lower courts are not bound by opinions that rely on "a casual disregard of the rules of statutory interpretation.  In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself*." Id. citing Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U. S. 401, 407, (2011). "Where, as here, that examination yields a clear answer, judges must stop." *Id.*

Similarly, FOIA's relevant statutory language provides a clear answer. "By its legal definition, the term '*de novo*' means "[anew]; afresh; a second time." *Lindsay v. Beaver Brook Section One, Inc*., 322 A.2d 13, 14 (Del. 1974) *quoting* Black, Law Dictionary (1968 Ed.) 483. The meaning of *de novo* was well-known at the time FOIA was adopted, and later amended.  The D.C. Circuit Court confirmed, in interpreting another statute, that "'the district court is to 'weigh the evidence' after 'a hearing' (if a hearing is desired by the government or the court), which is exactly what a district court does when deciding any matter *de novo*." *United States v. Ecker*, 543 F.2d 178, 184 (D.C. Circ. 1976).

Here, there has been no Rule 26 disclosures and no other avenue for Plaintiff to obtain and provide evidence to weigh or for the Court to use in deciding whether to hold a hearing on the Exemptions, "which seriously distorts the traditional adversary nature of our legal system's form of dispute resolution." *Vaughn*, 484 F.2d at 824.  BLM's *Vaughn* index does not remedy the problems identified in the *Vaughn* opinion, and instead allows high-level BLM personnel and litigation counsel, without benefit of available evidence, to state that the withholdings were justified.  Here, by filing the unsigned *Vaughn* index in the ECF system, litigation counsel is

presumably testifying. Fed.R.Civ.Pro. 11(a). This approach deviates from "*de novo*" review and fails to meet the basic standards of our legal system. *Vaughn,* 484 F.2d at 824.

BLM's position effectively allows "a decisionmaker to review and evaluate [her] own prior decisions," have counsel testify through an unsigned index, and thereby create unnecessary constitutional problems involving due process and separation of powers. *Withrow*, 421 U.S. at 58 n.25 (1975). Plaintiff can find no contemporary interpretation that would limit *de novo* review to one party's presentation of the evidence via an unsigned *Vaughn* index.

Relying on an unsigned *Vaughn* index that is not scrutinized in light of Plaintiff's assessment of information gained via initial disclosures, discovery, admissibility/evidentiary rules, cross examination, or the normally understood features of *de novo* review in the adversarial judicial system would effectively re-write the statute and relinquish the federal judicial function set out in FOIA's plain language to the agency itself. 5 U.S.C. §552(a)(4)(B).

## IV.   CONCLUSION

Plaintiff respectfully requests the Court: 1) grant its Cross Motion for Summary Judgment; 2) enter an order with findings setting out the scope of a reasonable FOIA search based on the as-yet incomplete record, 3) direct BLM to carry out and document a new FOIA-compliant search; 4) direct BLM to release responsive records and a new *Vaughn* index justifying any FOIA Exemption within 20 working days of such order; 5) direct BLM to comply with Rule 26 disclosure requirements within 30 days of such order; and, 6) direct Plaintiffs to submit a discovery plan within 20 days after receiving the FOIA and Rule 26 disclosures.

RESPECTFULLY SUBMITTED May 15, 2020:

s/ Matthew Sandler
**Matthew Sandler**
Rocky Mountain Wild

1536 Wynkoop St. Suite 900
Denver, CO 80202
303-579-5162
Matt@rockymountainwild.org

**Travis E. Stills**
Energy & Conservation Law
1911 Main Ave., Suite 238
Durango, Colorado 81301
(970) 375-9231
stills@frontier.net
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2020 I served a copy of this motion an all parties using the
CM/ECF system, unless otherwise noted below.

 s/ Matthew Sandler
**Matthew Sandler**