IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03171-KLM

ROCKY MOUNTAIN WILD, INC., a Colorado non-profit corporation,

     Plaintiff,

v.

UNITED STATES BUREAU OF LAND MANAGEMENT, a federal agency; and
UNITED STATES DEPARTMENT OF INTERIOR, a federal agency;

     Defendants.

_____

## SUPPLEMENTAL ORDER ON SUMMARY JUDGMENT
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court in connection with the portion of **Defendants' Motion for Partial Summary Judgment** [#18] ("Defendants' Motion") which was taken under advisement in the previously issued Order on Summary Judgment [#34]. The other portions of Defendants' Motion [#18] as well as Plaintiff's Cross Motion for Summary Judgment [#22] were granted in part and denied in part. As directed in the Order on Summary Judgment [#34], Defendants have filed a Supplemental *Vaughn* Index [#36] and a Notice of Filing of Supplemental Search Declaration and *Vaughn* Index [#37]. Accordingly, the remaining issues may now be determined.

## I. Introduction

     Plaintiff Rocky Mountain Wild ("RMW") brings this action under the Freedom of Information Act, 5 U.S.C. § 552, *et seq*. ("FOIA"). RMW alleges in the Complaint [#1] that

1

"ongoing FOIA violations by Defendants have prejudiced RMW's ability to fully participate in ongoing federal land management decisions, including the National Environmental Policy Act ("NEPA") processes for the Tres Rios Resource Management Plan ("RMP") Area of Critical Environmental Concern ("ACEC") Amendment Process, which negatively impacts the interests of RMW's members." *Id.* at 2.  The alleged FOIA violations relate to RMW's submission of a FOIA request to the Bureau of Land Management ("BLM" or "the agency") on May 15, 2019. *Id.* That request sought "copies of all records regarding the NEPA process, [Endangered Species Act] compliance, external and internal communications, and any other agency analysis related to the [Tres Rios Field Office] ACEC amendment process." *Id.* at 2-3; *see Attach. 1 to Defs.' Mot.* [#18].   The request stated that it was filed "because it is important for our members and citizens in the region to understand how the BLM has analyzed ACEC designation for areas that will either support recovery or negatively impact the Federally listed Gunnison sage-grouse." *Id.* The material facts in the case were stated in the Order on Summary Judgment [#34], which is incorporated herein. *See id.* at 3-13.

In the Order on Summary Judgment [#34], the Court dismissed Claim One of the Complaint [#1] in part and Claims Two and Three in their entirety. *See id.* at 3, 52-54. The only remaining claim is the portion of Claim One asserting that BLM improperly withheld records under the deliberative process privilege of Exemption 5, and that BLM failed to release all reasonably segregable information from documents that contain FOIA exempt material. *Id.* at 52-53.  These issues were taken under advisement pending a supplemental *Vaughn* index to be submitted by BLM. *See id.* at 47-49, 53.  BLM was

directed to articulate the foreseeable harm from the disclosure of the documents, including both the nature of the harm and the link between the specified harm and the specific information that was withheld or redacted under the deliberative process privilege. *Id.* at 48, 53. BLM was further directed to provide an explanation of the reasons behind its conclusion that non-exempt information is not reasonably excludable or segregable. *Id.* at 48-49, 53.

Claim One also alleged that BLM failed to conduct an adequate search. The Court found in the Order on Summary Judgment [#34] that the search was not sufficient in that BLM (1) failed to liberally construe FOIA and ensure that all relevant search terms were used to produce responsive documents; and (2) failed in not having Connie Clementson, a person who was likely to have retained responsive records, conduct a search. *Id.* at 29-31, 52-54. Plaintiff's Cross Motion for Summary Judgment ("RMW's Motion") was granted as to this issue, and Defendants' Motion [#18] denied. *Id.* The Court directed BLM to conduct a new search using all relevant search terms and phrases, and to include Connie Clementson of the Tres Rios Field Office ("TRFO") in the search. *Id.*

Defendants filed a Supplemental *Vaughn* index [#36] regarding the deliberative process privilege. Defendants also filed a Declaration regarding the new search and a *Vaughn* index as to documents that were withheld or redacted as a result of the search. *See* [#37]. Accordingly, the Court must analyze whether the agency has met its burden of demonstrating that the material withheld or redacted under the deliberative process privilege of Exemption 5 was proper. The Court must also determine whether the new search conducted by BLM was reasonable and consistent with the Court's Order on

Summary Judgment [#34], and whether the withholding or redaction of the material found in the new search was proper under the cited exemptions.

## II.  Standard of Review

Pursuant to Fed. R. Civ. P. 56(a), summary judgment should be entered if the pleadings, the discovery, any affidavits, and disclosures on file show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  The burden is on the movant to show the absence of a genuine issue of material fact.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323).  FOIA actions are typically decided on motions for summary judgment.  *Rocky Mountain Wild, Inc. v. United States Forest Serv.*, 138 F. Supp. 3d 1216, 1221 (D. Colo. 2015) (citing *Anderson v. Health & Human Servs.*, 907 F.2d 936, 942 (10th Cir.1990)).  Summary judgment may be granted to the government agency if "'the agency proves that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.'"  *Friends of Blackwater v. U.S. Dep't of Interior*, 391 F. Supp. 2d 115, 119 (D.D.C. 2005).

## III.  Analysis

### A.   The Documents Withheld Under the Deliberative Process Privilege in Exemption 5

The Court first addresses the portion of Defendants' Motion relating to Claim One which was taken under advisement, *i.e.,* whether the agency met its burden of showing that it properly withheld or redacted documents under the deliberative process privilege in

Exemption 5.  As noted in the Order on Summary Judgment [#34], Exemption 5 allows an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency."  5 U.S.C. § 552(b)(5).   The deliberative process privilege under Exemption 5 "shields documents reflecting advisory opinions, recommendations and deliberations compromising part of a process by which governmental decisions and policies are formulated."  *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1226 (10th Cir. 2007).  Therefore, it is intended to protect materials that reflect agency decision-making and thoughts prior to taking official action.  *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) ("The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions'. . . . ") (citation omitted).  This privilege "further serves to prevent the premature disclosure of proposed policies, and avoids "misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action."  *Trentadue*, 501 F.3d at 1226.

To qualify for protection under the deliberative process privilege, materials must be both "predecisional" and "deliberative."  *Trentadue*, 501 F.3d at 1227.  "Predecisional" means that the information must be produced in the process of, or prior to, a final agency decision or course of action.  *Id*.  "Deliberative" material has been interpreted to encompass opinions, recommendations, and advice, but not solely factual material.  *Id.; see also Judicial Watch, Inc. v. U.S. Dep't of Justice,* 375 F. Supp. 3d 93, 97, 99-100

(D.D.C. 2019) (*Judicial Watch I*) (holding material is "deliberative" if it "'reflects the give-and-take of the deliberative process'") (quotation omitted).  The FOIA Improvement Act of 2016 added to the requirements for establishing the privilege, and set a "heightened standard for an agency's withholdings under Exemption 5."  *Judicial Watch I,* 375 F. Supp. 3d at  97, 100 (D.D.C. 2019).  Under this Act, agencies may withhold information "only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption."  5 U.S.C. § 552(a)(8)(A)(i).  "In other words, even if an exemption applies, an agency must release the document unless doing so would reasonably harm an exemption-protected interest."  *Judicial Watch I.*, 375 F. Supp. 3d at 100.  While the foreseeable harm requirement "does not go 'so far as to require the government to identify harm likely to result from disclosure of *each* of its Exemption 5 withholdings[,]'" the government agency needs to do more than 'perfunctorily state that disclosure of all the withheld information—regardless of category or substance—would jeopardize the free exchange of information.'" *Id.* (quoting *Rosenberg v. Dep't of Defense*, 342 F. Supp. 3d 62, 79 (D.D.C. 2018)).

Here, to provide relevant context, the Court first explains the information relied on by Defendants in their Motion [#18] to support the withholding of materials under the deliberative process privilege, which was found to be deficient, and then addresses whether the Supplemental *Vaugh* Index [#36] bridges the gap and is sufficient to show that material was properly withheld under that privilege.  Defendants relied in their Motion [#18] on a *Vaughn* index [#18-7] and a Declaration submitted by BLM representative Laura Garcia Hinojosa [#18-1] ("Agency Declaration") to support their reliance on Exemption 5 and the deliberative process privilege.

6

The Agency Declaration [#18-1] explained that "[t]he FOIA request in this case sought records related to the Tres Rios Field Office's Resource Management Plan Area of Critical Environmental Concern Amendment process." *Id.* ¶ 20.  The BLM solicited public comments in 2015 and 2016 on an amendment to the RMP that would add one or more Areas of Critical Environmental Concern ("ACEC") to the RMP.  *Id.*  The Hinojosa Declaration [#18-1] explained as to the deliberative process privilege:

> After receiving significant public comments and issuing both a Preliminary and a Final Environmental Assessment, the agency ultimately adopted three ACECs encompassing 14,335 acres of BLM-managed public lands. No decision was made on two other potential ACECs, both of which are located in Gunnison sage-grouse habitat. . . . .The BLM's Decision Record was signed, and the ACEC Amendment decision became final, on January 29, 2020. . . .Deliberative documents produced before that date are, therefore, subject to the deliberative process privilege.
>
> As detailed in the *Vaughn* index, some of the materials subject to Exemption 5 are both pre-decisional and deliberative, largely consisting of draft documents, proposed changes and comments to draft documents, pre-decisional proposals and recommendations, and other pre-decisional internal agency communications reflecting employees' personal opinions, thoughts, questions, and comments relating to the Tres Rios Field Office ACEC Amendment. These redacted materials are not, and do not contain or represent, formal or informal agency policies or decisions.  Instead, they are the result of frank and open discussions among employees of the BLM and Department of the Interior.
>
> In addition, if agency employees knew that their preliminary advice, opinions, evaluations, proposals, or comments would be released to the public, candid discussion among these employees would be chilled. This chilling effect would, in turn, decrease the quality of the agency's decisions by inhibiting the free-flowing exchange of ideas in advance of these decisions, thereby undermining the agency's ability to perform its mandated functions.
>
> In addition to hampering candid discussion among agency employees, release of this redacted information would (also as indicated in the *Vaughn* index) likely lead to public confusion regarding the agency's decision-making in this case. Specifically, dissemination could mislead the public by

suggesting that the agency had reasons for taking certain courses of action that were *not* in fact the ultimate reasons for the agency's final decisions.

*Id.,* ¶¶ 21-22, 50-52.  In the *Vaughn* Index [#18-7] submitted with Defendants' Motion [#18], Defendants reiterated as to the alleged harm that disclosure of the material "would cause public confusion and would chill employees' willingness to engage in frank, back and forth discussions in which they are free to posit questions and offer ideas in the course of their decision-making."  *See, e.g., id.*

The Court agreed with RMW that Defendants did not meet their burden of showing that BLM's reliance on the deliberative process privilege was valid under the heightened standard of the FOIA Improvement Act of 2016.  *Order on Summ. J.* [#34] at 47*.*  The Court found that the type of boilerplate language as to the alleged harm from disclosure of the redacted or withheld material was " far short of what is required in the Act."  *Id.* at 47-48 (citing *Judicial Watch I*, 375 F. Supp. 3d at 100).

As the court in *Judicial Watch I* noted, "[i]f the mere possibility that disclosure discourages a frank and open dialogue was enough for the exemption to apply, then Exemption 5 would apply whenever the deliberative process privilege was invoked regardless of whether disclosure of the information would harm an interest protected by the exemption." *Id.*, 375 F. Supp. 3d at 101.  That court found that even a supplemental explanation offered in the case was not sufficient, because the agency "provided no explanation as to why disclosure is likely to discourage frank and open dialogue as to the specific withholdings—or categories of withholdings—in this case." *Id.*  It was noted that the agency "simply posit[ed] that such disclosures '*could* chill speech' and could have an

effect on interagency discussion." *Id.*   The court stated that "[t]he question is not whether disclosure could chill speech, but rather if it is reasonably foreseeable that it will chill speech and, if so, what is the link between this harm and the specific information contained in the material withheld." *Id.*; *see also Judicial Watch, Inc. v. U.S. Dep't of Justice ,* No. 17-0832, 2019 WL 4644029, *4-5 (D.D.C. Sept. 24, 2019) ("*Judicial Watch II*") (finding insufficient an explanation that "[d]isclosure of the information reasonably could be expected to chill the open and frank expression of ideas, recommendations, and opinions [as to] internal discussions expressing opinions on pending or anticipated cases" and "[r]evealing such opinions would hinder the ability of agency staff to provide candid evaluations and recommendations"; and stating "[l]ike the generic descriptions of harm provided in *Rosenberg* and *Judicial Watch [I].* . .  these generic and nebulous articulations of harm are insufficient" because "the agency has failed to identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials" and "has not connected the harms in any meaningful way to the information withheld, such as by providing context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure.")

Finding the above authority persuasive, the Court in this case noted that to satisfy its obligations under FOIA and its 2016 Amendment, the agency must "'articulate both the nature of the harm and the link between the specified harm and specific information contained in the material withheld.'" *Id.* at 47.  Accordingly, the Court ordered Defendants to submit a supplemental *Vaughn* index that supports the withholding or redaction of

documents under the deliberative process privilege of Exemption 5 and meets the requirements of the FOIA Improvement Act of 2016. *Id.* at 48. Defendants' argument in their Motion [#18] that BLM properly relied on the deliberative process privilege to withhold or redact documents was taken under advisement pending the Court's receipt and analysis of the supplemental *Vaughn* index. *Id.*

The Court now turns to the Supplemental *Vaughn* Index [#36-1] submitted by Defendants to determine if they have now met their burden of showing that the withheld or redacted documents are subject to protection under the deliberative process privilege of Exemption 5. Defendants assert that the Supplemental *Vaughn* Index [#36-1] adds an additional description of the withheld or redacted material and what is being discussed or considered, and the BLM's rationale for claiming deliberative process privilege over it in red type. *See* [#36] at 1. The Court agrees that the Supplemental *Vaughn* Index [#36-1] provides additional detail regarding the material being withheld and what is being discussed. For example, as to an attachment to an email regarding TRFO ACEC Alternatives Summary, there is a discussion of Draft Alternative A and removal of draft text as inaccurate, and by whom – subject matter experts. *See, e.g., id.* at 1. Thus, the agency now makes clearer what it is considering, discussing, or recommending in the identified redacted or withheld material, including such things as what it deems to be the key issues in the draft document, the appropriate criteria to be used, the purpose and need for the proposed action, actions versus prescriptions and which actions may be more appropriate, concerns and considerations related to the material and what should be removed or was inaccurate, public comments and responses to be made, new areas or material to be

included, controversial material, delays or restrictions in the plan amendment process, litigation risk and other controversial information, and what the agency believes is the correct course of action.  *See, e.g., id.*

The Court finds from this that the agency has better explained the documents under consideration in connection with the deliberative process privilege and the topics being discussed in the material that was redacted or withheld.  The Court also finds from the Agency Declaration and the two *Vaughn* Indexes that the documents at issue "reflect[ ] advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated[,]" which may be shielded under the deliberative process privilege.  Further, the documents are predecisional and deliberative, as the information produced by Defendants supports a finding that the information was created in the process of, or prior to, a final agency decision or course of action, and encompasses opinions, recommendations, and advice of subject matter experts. *See Trentadue*, 501 F.3d at 1227.  The issue is whether BLM has now sufficiently shown foreseeable harm by articulating a link between the specified harm (public confusion and the fact that disclosure could chill agency employees' willingness to engage in frank discussions), and the specific information contained in the withheld material.  *See O.  Summ. J.* [#34] at 48.

As District Judge William J. Martinez highlighted in another case filed by RMW, "to meet the foreseeable-harm requirement, the agency 'must 'identify specific harms to the relevant protected interest that it can reasonably foresee would actually ensue from disclosure of the withheld materials' and 'connect[ ] the harms in [a] meaningful way to the

information withheld." *Rocky Mountain Wild, Inc. v. United States Forest Serv.*, No., 2021 WL 825985, at *20 (D. Colo. March 4, 2021) (quoting *Judicial Watch* II, 2019 WL 4644029, at *5). In other words, the agency must provid[e] context or insight into the specific decision-making processes or deliberations at issue," and how it would be harmed by disclosure. *Judicial Watch II*, 2019 WL 4644029,at *5. !

The Court finds that BLM has satisfied this burden. Unlike the initial *Vaughn* Index [#18-7], the BLM has now provided context into the decision-making processes or deliberations at issue, by "specifically focus[ing] on the 'information at issue" in the redacted material, and reasonably explaining how BLM would be harmed by disclosure of that information, i.e., public confusion or chilling of BLM employees' willingness to engage in frank back-and-forth discussions in the course of their decision-making. *See Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2011). The agency thus linked the harm to the specific information in the withheld documents. As an example, the Court again refers to the material withheld in connection with an attachment to an email regarding TRFO ACEC Alternatives Summary. The initial *Vaughn* Index stated as to this material that:

> Redacted material consists of pre-decisional, deliberative exchange of comments and tracked changes in Word document discussing language changes in ACEC Amendment and potential alternatives among BLM staff. Disclosure of the redacted information could create public confusion and would chill employees' willingness to engage in frank, back-and-forth discussions in which they are fee to posit questions and offer ideas in the course of their decision-making.

The Supplemental *Vaughn* Index [#18-7], in addition to adding language about what was discussed, now provides the context for why the matter being discussed could cause the expressed harm.  Thus, as to the example above, BLM states:

> Subject matter experts are discussing Draft Alternative A and draft text was removed as it is not accurate in the draft document.  Disclosure of the redacted information, which identifies relevant and important criteria for each area under this alternative in the draft document and release of this information could cause public confusion.  Because some of the redacted information may have been rejected or not ultimately used, its disclosure could chill frank employees' willingness to engage in frank, back-and-forth discussions in which they are fee to posit questions and offer alternative ideas in the course of their decision-making.

*Id.* at 1.

This additional context added as to the material withheld under the deliberative process privilege is consistent throughout the Supplemental *Vaughn* Index [#36].  As another court stated, "[w]hile some of the [agency's]s discussion still verges on boilerplate, the Court finds overall that the agency has adequately articulated 'the link between this harm and the specific information contained in the material withheld.'"  *Nat. Res. Defense Council v. U.S. Env't Prot. Agency*, No., 2019 WL 4142725 (S.D.N.Y. Aug. 30, 2019), *rev'd in part and vac'd in part on other grounds*, 19 F. 4th 177 (2nd Cir. 2021).  Accordingly, the Court finds that Defendants have met their burden of showing that the material withheld under the deliberative process privilege was appropriate.

While there is a dearth of authority in this Circuit as to the foreseeable harm requirement of Exemption 5, Judge Martinez's decision in *Rocky Mountain Wild, Inc.* provides supports for the Court's finding.  In that case, in arguing that the deliberative

process privilege applied, the agency stated in its original declaration that disclosure of the documents would reveal confidential, attorney-client privilege material, attorney mental impressions and factual work product.  *Id.,* 2021 WL 825985, at *20.   In a supplemental declaration, "it was further clarified that the harm to [the agency] would be that '[p]ublicizing confidential communications seeking or providing legal advice, or documents otherwise reflecting legal advice, would impede the agency's ability to seek, receive, and rely upon the candid and complete legal advice of OGC and DOJ attorneys." *Id.* (quotation omitted). Although Judge Martinez found that the original declaration "may fairly be categorized as generic," he "d[id] not find that the supplemental declaration's explanation is boilerplate or a generic articulation of harm. "  *Id.*  Rather, it was found to be "a specific, foreseeable harm that could occur should disclosure happen." *Id.*  Judge Martinez further noted that although the defendant did not connect the harm in a meaningful way to each withheld document individually, it did so "in the categorical context of all the withheld documents." *Id.*  Accordingly, Judge Martinez found that the defendant had satisfied the foreseeable-harm standard.

Similarly, in *Machado Amadis,* the D.C. Circuit considered the adequacy of an agency's foreseeable harm showing under the deliberative process privilege regarding "a series of 'Blitz Forms,' documents used to adjudicate FOIA appeals, with redactions under the deliberative process privilege." *Id.*, 971 F.3d at 369-71.  In support of the redactions to the forms, the agency's affidavit stated that the withheld materials revealed "line attorneys' evaluations, recommendations, discussions, and analysis which are prepared for senior-level review and decision-making," and asserted that disclosure of this

information "would discourage line attorneys from candidly discussing their ideas, strategies, and recommendations, thus impairing the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals." *Id.* at 371 (alteration and internal quotation marks omitted). The D.C. Circuit deemed this showing of foreseeable harm sufficient, without any further factual proffer by the agency, because the agency "specifically focused on the information at issue" and properly "concluded that disclosure of that information would chill future internal discussions." *Id.* From this, the court concluded that the agency "correctly understood the governing legal requirement and reasonably explained why it was met here." *Id.*

Finally, in another case, the District Court for the District of Columbia found that the agency's identification of the specific information at issue and conclusion that disclosure would "chill future internal discussion" was "in line with what the D.C. Circuit has found to be satisfactory under the foreseeable harm standard" and was not, contrary to the plaintiff's assertion, "significantly more speculative or vague." *Climate Investigations Center v. United States Dep't of Energy*, No. 16-cv-00124 (APM), 2022 WL 3277350, *6 (D.D.C. Aug. 11, 2022) (citing *Machado Amadis*, 971 F.3d at 371). The court found that the agency "articulated the foreseeable harm for each document withheld or redacted and tied it to the specific document or decision at issue." *Id.* The court further stated that while the plaintiff "'undoubtedly would have preferred [the agency] to have provided more specifics, . . . [t]he degree of detail necessary to substantiate a claim of foreseeable harm is context-specific." *Id.* (quotation omitted). In that case, the plaintiff had requested documents from the Department of Energy concerning the funding and development of a power plant that used

15

"clean coal" technology, and certain emails between and among agency employees and other records were withheld under the deliberative process privilege. *See Climate Investigations Center v. United States Dep't of Energy*, No. 16-cv-00124 (APM), 2017 WL 4004417, at *1 (D.D.C. Sept. 11, 2017). The court found that the agency satisfied its burden based on the nature of the documents and the decision-making process at issue. The Court finds this also to be true in this case. *See also Nat'l Res. Defense Council,* 2019 WL 4142725, at *5 (finding that a supplemental agency affidavit showing that the agency "reasonably foresaw that disclosure would harm its Exemption 5 related interest" met the foreseeable harm requirement of FOIA because it "provided substantially more context for the decisionmaking processes in question and the harms that would reasonably ensue from disclosure of the material, including a risk of confusing the issues and misleading the public").[1]

Based on the foregoing, the Court finds that the agency has now shown that the material withheld under the deliberative process privilege of Exemption 5 was proper. The

---

[1] In addition, *see Mermerlstein v. U.S. Dep't of Justice, F.B.I.*, No. 19-cv-00312, 2021 WL 3455314,* (E.D.N.Y. Aug. 4, 2021) (finding an agency declaration stating that the withheld materials contained deliberations where agents were requesting/providing actions and feedback, making proposals, working to come to a consensus on final agency decisions, asking questions and/or deliberating to determine a final decision or course of action was sufficient to warrant protection under the deliberative process privilege based on "the threat of public confusion that would follow public disclosure of these communications" revealing "give-and-take between agency members"); *Keeping Gov't Beholden, Inc. v. Dep't of Justice*, 2021 WL 5918627, at * 11-12 (D.D.C. Dec, 13, 2021) (finding that although the *Vaughn* index contained largely boilerplate language about the potential chilling effect of disclosure of the material at issue, when "viewed in tandem" with the supplemental declaration, "the overall picture is sufficient to illustrate how the agency's deliberations would be harmed; the supplemental declaration provided a more detailed description of the contents of the withheld document, provid[ed] context or insight into the specific decision-making processes or deliberations at issue," and the "articulation of the reasonably foreseeable harm caused by disclosure of the information withheld here is at least as specific as an explanation the D.C. Circuit upheld" in *Machado Amadis*).

Court also finds that BLM has provided an additional description in the Supplemental *Vaughn* Index in blue type of the scope of the withheld material, *e.g.,* "only comments and deleted language redacted[,]"which the Court finds is adequate to show that BLM has released all reasonably segregable information.  Accordingly, Defendant's Motion [#18] is **granted** as to the remaining portion of Claim One.

**B.     The New Search and the Documents Withheld**

       **1.     The Adequacy of the Search**

The Court next addresses the new search that was conducted pursuant to the Order on Summary Judgment [#34], as discussed in Section I, *supra*.  To provide further detail as to this issue, the Court found that many of the described searches by the agency custodians were overly restrictive because the custodians selectively picked which terms to use and did not use obviously relevant terms or search phrases.  *O. Summ. J.* [#34] at 29.  The Court further found that the decision to leave the search parameters to each custodian resulted in a disjointed search where each custodian used different terms and/or phrases to identify records and/or different repositories based on how each interpreted the FOIA request, and the agency custodians selectively picked which repositories to search. *Id.*  Thus, BLM and its custodians were found not to have construed RMW's FOIA request liberally to ensure that all responsive documents would be located.  *Id.*

The agency was ordered to conduct a new search, and the agency custodians were directed to search all identified repositories that are likely to contain responsive records. *Order on Summ. J.* [#34] at 31-32, 52.  The agency custodians were also directed to search using all relevant search terms and phrases that were identified in the Order, as well as

17

any other search terms and phrases that the agency identified under the parameters of the legal authority identified in the Order on Summary Judgment [#34], and to produce all responsive documents that were found. *Id.* Further, the BLM was directed to identify the software used and consider using Boolean search terms and phrases to limit the number of unresponsive documents returned. *Id.* at 32. Finally, the Court ordered a search by TRFO manager Connie Clementson. *Id.* at 35, 52.

In response, Defendants filed a Notice of Filing Supplemental Search Declaration and Vaughn Index [#37] ("Notice). The Notice attached a Declaration of Laura Garcia Hinojosa Regarding Supplemental Records Search [#37-1] ("Hinojosa Declaration") and a *Vaughn* Index to the Supplemental Search [#37-2]. The Hinojosa Declaration [#37-] states that Ms. Hinojosa coordinated a supplemental search for records within the BLM Tres Rios Field Office ("TRFO") by 13 BLM staff members (identified in paragraph 4, who apparently were all involved in the initial search) and who were directly working on the TRFO Area of Critical Environmental Concern ("ACEC") amendment to the TRFO Resource Management Plan. *Id.* at 2.[2] Connie Clementson was also included as a supplemental search custodian. *Id.* The Hinojosa Declaration [#37-1] explains the process by which the supplemental search was conducted, as well as the process by which the agency identified material that should be withheld under the FOIA exemptions. *Id.* Ms. Hinojosa stated that she had personal involvement in, and personal knowledge of, each stage of the agency's

---

2 One relevant custodian, Keith Fox, was no longer with the BLM. For this individual, Ms. Hinojosa submitted a request to the eMail Enterprise Records and Document Management System (eERDMS) of the Department of the Interior, and requested that Mr. Fox's archived email accounts be searched for references to the ACEC Amendment. *Id.* at 3.

search for records, as well as the redactions made to these records pursuant to the FOIA exemptions. *Id.*

Ms. Hinojosa tasked each custodian with searching all locations in his or her possession reasonably likely to house responsive records, including (1) personal electronic drives, (2) shared electronic drives, (3) emails, and (4) paper records. *Hinojosa Decl.* [#37-1]- at 3.  She also asked each custodian, upon returning responsive documents, to specifically state the locations each had searched and to certify that these locations were the only locations in their possession reasonably likely to house responsive records. *Id.*  Further, Ms. Hinojosa asked the custodians to again designate these same folders as responsive, even though she was aware that this would result in a significant amount of redundant material being provided, as many of the documents contained in these folders had already been produced during the agency's initial FOIA response.  *Id.* at 3-4.  In addition to asking employees to search their personal and shared electronic drives, folders, and paper files, Ms. Hinojosa also asked the custodians to search their emails for responsive records. *Id.* at 4.

For the email search, Ms. Hinojosa stated that she worked with subject matter experts and, based on the Court's Order, identified universal search terms that would capture records responsive to the FOIA request.  *Hinojosa Decl.* [#37-1]- at 4.  The universal search terms that were chosen as reasonably likely to identify all responsive records included: (1) Areas of Critical Environmental Concern; (2) Resource Management Plan Amendment; (3) ACEC; (4) RMP ACEC; (5) Gunnison Sage-grouse ACEC; (6) GUSG ACEC; (7) ACEC RMP Amendment; (8) VRM; (9) Mudsprings; (10) TRFO RMP

19

Amendment; (11) Tres Rios Amendment; (11) Plan Amendment; (12) ESA Compliance; and (13) Amendment Process. *Id.* Ms. Hinojosa stated that she wanted to be over-inclusive in selecting these terms, and that these terms were selected to ensure that the custodians retrieved as many potentially responsive records as possible. *Id.* at 5. Finally, regarding the cutoff dates for the email searches, Ms. Hinojosa directed the custodians to search for emails between March 1, 2016 to May 31, 2019. *Id.*

After the custodians completed their search, Ms. Hinojosa personally reviewed each of the potentially responsive records. Many of these records were redundant to what had already been produced, or were not responsive to the FOIA request. *Hinojosa Decl.* [#37-1] at 5. The majority of the new responsive records that were found were not substantive and, according to Ms. Hinojosa, have no bearing on the NEPA process or analysis of the TRFO ACEC Amendment process. *Id.* However, to ensure complete compliance with the Court's Order, Ms. Hinojosa stated that she included these documents among those to be produced to RMW. *Id.*

Based on Ms. Hinojosa's review of the documents provided to her by the custodians in response to the supplemental search, 383 pages of records that had not previously been produced to RMW were responsive to the supplemental search, and the Hinojosa Declaration [#37-1] states that these documents were provided to RMW. *Id.* In addition, in the course of discussing the matter with TRFO staff, Ms. Hinojosa states that it came to her attention that certain public comments on the ACEC Amendment scoping process, totaling 420 pages of records, had not been included in the documents produced in response to the original FOIA request. While these documents were not technically BLM

20

documents—in that they were comments received from the public—Ms. Hinojosa stated that they likely should have been included as responsive to the original request.   *Id.* Combining the documents identified by the supplemental search and the additional public scoping comments, Ms. Hinojosa ultimately determined that 803 pages should be produced to RMW.  *Id.*   Three pages were withheld in part, and redacted under FOIA Exemptions 5 and 6.  *Id.*

The Hinojosa Declaration [#37-1] asserts that the records that were located in the new search, and the actions undertaken by the agency to identify them, fulfill the requirements of a reasonable search under FOIA and as required by the Court's Order. *Id.* at 6.   The Court agrees.   While the Court found that the prior search resulted in a selective and restrictive use of search terms conducted by each custodian, the parameters of this search appear to comply with the Order on Summary Judgment [#34].   Universal search terms which were based on the Court's Order [#34] and in consultation with subject matter experts were used by all the custodians, who uniformly searched the identified repositories.  *Id.*  A search was also conducted by Connie Clementson, as ordered by the Court.  Further, the agency made efforts to ensure that the search would be over-inclusive in connection with locating relevant documents.   This appears to be in keeping with the principle that a FOIA request should be liberally construed to ensure that all responsive documents are located.   *Id.*   Consistent with that, the agency located another 803 documents that were produced to RMW.  Finally, the agency complied with the Order's directive to identify the software, and to produce relevant documents to RMW.

Based on the foregoing, the Court finds in connection with this new search that that the agency made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *Rocky Mountain Wild, Inc. v. United States Forest Serv.*, 138 F. Supp. 3d 1216, 1221 (D. Colo. 2015) (quoting *Oglesby v. United States Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).  The new search complied with the Court's directives in its Order on Summary Judgment [#34], and was adequate.  Accordingly, the agency has no further search obligations in connection with this case.  The Court now turns to the three documents that were partially withheld in connection with the new search.

### 2.   Whether Documents Were Properly Withheld

As noted earlier, the Hinojosa Declaration [#37-1] states that three pages of records were withheld in part under FOIA Exemptions 5 and 6.

Exemption 5 and the deliberative process privilege were discussed previously, and one page of the records was withheld in part under this exemption.  The agency states as to this document, which is an attachment to an email, that the redactions are pre-decisional, deliberative comments among BLM employees regarding the alternative summary of this draft document for the ACEC PEA NOA Comment response, and more specifically, discussions by BLM employees as to how to address comment responses in the draft document.  *Vaughn Index to Suppl.* [#37-2].  The agency states that "[d]isclosure of the redacted information could create public confusion and would chill employees' willingness to engage in frank, back-and-forth discussions in which they are free to posit questions and offer ideas in the course of their decision-making."  *Id.*  The Court finds that

22

this is deficient for the same reasons as the initial *Vaughn* Index as to the other documents which were withheld under Exemption 5 – because it does not meet the foreseeable harm requirement by connecting the harms in any meaningful way to the information withheld, such as by providing context or insight into the specific decision-making processes or deliberations at issue, and how they would be harmed by disclosure.  The agency "simply posit[ed] that such disclosures '*could* chill speech' and could have an effect on interagency discussion[,]" with no explanation as to why.  *Judicial Watch I,* 375 F. Supp. 3d at 101. The agency was aware of the Court's requirement for such information because it was responding to the Order on Summary Judgment [#34].  The failure to provide this information means that the agency did not meet its burden of showing that the material was properly withheld under deliberative process privilege, and the Court orders that this redacted material in the document be **produced**.

The other two redacted documents were withheld under Exemption 6.  As noted in the Order on Summary Judgment [#34], Exemption 6 permits the withholding of personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.  *Id.* at 52 (citing 5 U.S.C. 552(b)(6)).  The information that has been redacted consists of personal phone numbers of a member of the public.  *Vaughn Index to Supplemental Search* [#37-2].  This information was properly withheld to protect these individual's private information, the  disclosure of which the Court finds would constitute a clearly unwarranted invasion of personal privacy.

### IV. CONCLUSION

Based on the foregoing,

23

IT IS HEREBY **ORDERED** that the portion of Defendants' Motion [#18] that was taken under advisement is now **GRANTED**.  The Court finds that the material withheld or redacted under the deliberative process privilege of Exemption 5 was proper.  To the extent Plaintiff's Motion [#22] addressed this issue, the Motion [#22] is **DENIED.**

IT IS FURTHER **ORDERED** that the new search ordered by the Court was reasonable and complied with the Court's directives in the Order on Summary Judgment [#34].

IT IS FURTHER **ORDERED** that as to the documents withheld in connection with the new search, the withholding of material in two records under Exemption 6 was proper. The withholding of material in one record under Exemption 5 was not proper because the agency did not meet its burden of demonstrating the foreseeable harm requirement. Accordingly, this material shall be produced to RMW.

IT IS FURTHER **ORDERED** that because both Motions for Summary Judgment [#18, #22] have been resolved and were both granted in part and denied in part, judgment shall enter accordingly and the Clerk of Court shall terminate this case.

Dated: July 20, 2023

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

24